[No. 2804.    Oct. 25, 1924]

STATE v. MARTINEZ.

SYLLABUS BY THE COURT

1. The instructions of the court to the jury in a criminal case should cover the whole case; and a defendant, upon proper written request, is entitled to have an instruction given upon his theory of the case, and to have the law declared in reference to the facts which he contends establish such defense when there is any competent evidence reasonably tending to support such facts.

2. Where, on a trial for homicide, the defendant, a woman, claims that she killed the deceased to protect herself from an attempted rape and an assault with intent to commit such rape, and presents proper written requests to the court to apply the law of justifiable homicide to the facts constituting such defense as testified to by her, it is the duty of the court to give such requested charges, or equivalent ones in language of his own choosing; and it is not sufficient merely to charge in general terms the law of justifiable homi-

cide as applicable to the defense of one's person from death or great personal injury without any further reference to the nature of such apprehended injury.

3. The admission in evidence of a purported confession of a defendant is to be determined by the fact of whether the same was made freely and without hope of benefit to his case; and when such confession is offered the trial judge should, in the absence of the jury, inquire into the circumstances under which the confession was alleged to have been made and determine from such evidence whether or not such confession was in fact voluntary, before admitting the same in evidence.

Appeal from District Court, Taos County; Leib, Judge.

Hilaria Martinez was convicted of voluntary manslaughter, and she appeals. Reversed and remanded.

H. A. Kiker and H. L. Bickley, both of Raton, for appellant.

Milton J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

FORT, J. Hilaria Martinez was indicted in Taos county for the murder of Andres Lopez, and upon the trial was found guilty of voluntary manslaughter. This appeal is from the judgment and sentence entered upon the verdict so returned.

The evidence for the state tended to show that the deceased, shortly after noon on February 16, 1921, was proceeding by a trail leading from the place where he was staying, to a cabin which he was building, some distance away, and near the home of the defendant and her husband, with his axe on his shoulder, accompanied by his little son eight years old; that he met the defendant, Hilaria Martinez, washing near a mill between the hill upon which the deceased was staying and the hill upon which she and her family resided; that the defendant said to the deceased, "You have gotten me into trouble," and deceased asked her, "Who told you?" and on being informed that "Aloyho" had informed her, deceased said, "Aloyho

is a liar, and you are a liar;'' that the defendant there-
upon said, ''Get away from here,'' and deceased said,
''Well, I will get away,'' and started away, when
defendant fired twice at him with a 22-caliber rifle,
one bullet striking him in the back of the head; that
the deceased fell forward and threw his axe in front
of him.

The evidence of the defendant tended to show that
she was a married woman living with her husband;
that the deceased had, in December, 1920, purchased
a plot of ground from her husband near their home,
upon which he was building a dwelling house; that
some time in January, 1921, deceased came to her
house, during her husband's absence, at the noon hour,
about the time of their noonday meal, and at her in-
vitation ate dinner with the defendant and her family;
that after dinner deceased made an effort to grab
defendant, and she went out of the house and told
him to go away, and that she was going to tell her
husband; that the deceased left the premises, and on
the following day returned shortly after she had
finished her noonday meal, while she was washing
dishes, her husband being still absent; that the house
of defendant consisted of a kitchen and bedroom, she
being in the kitchen; that deceased grabbed her and
tried to take her to the room, and she got away from
him and started to take a rifle and told him that if he
did not get away she would fire, whereupon he left;
that her husband returned that night, and she told
him what had occurred; that the deceased, shortly
thereafter, returned to her premises while her husband
was at home to get a wagon which he had left, and
that her husband, in the presence of a neighbor, asked
the deceased why he was bothering defendant, and
told him to get away from the house, and that he did
not want him at his house any more, and not to come
within his property or his wife's friendship; that de-
ceased did not afterwards return to her house, but,
while working on his little house a short distance
away, would wave at her and whistle to her when he
saw her; that he only did this while her husband was

away and while she was alone; that on the 16th day of February, during her husband's absence from home, she, in company with her children, went to the mill about 9 o'clock to do her washing and took a rifle with her to protect herself from the deceased; that at the noon hour, she and her children went to her house for dinner, taking the rifle with her, and about 1 o'clock returned to her washing at the mill, again accompanied by her children and carrying the rifle; that shortly thereafter the deceased came up behind her, while she was rubbing clothes and the first she knew of his presence was that he put his arm around her and hugged her; that she got away and told him to get away, and that he said he would not do so; that she jumped and took the rifle and again directed him to leave, and he told her he would not, but raised his axe in a threatening position, and when she saw him with the axe she again told him to get away, and again he said he would not, and she fired without placing her rifle to her shoulder; that he was facing her when she fired the first time, but she does not know what his position was when she fired the second shot, because she "was in anger and in fear at the same time"; that she shot rapidly, and after the second shot he was lying down, and she went and reported to the justice of the peace what had happened; that the justice of the peace told her to go home, and she did so; that she had no conversation with the deceased until he grabbed her.

[1] 1. The first error assigned by the defendant is the refusal of the court to give to the jury the following requested instruction:

"You are instructed the defense of one's person may, in the case of a woman, as well include the protection of her chastity as her body from injury of any other kind; and if a woman be attacked under certain circumstances, as viewed from the standpoint at the time of said attack, as will lead her to reasonably apprehend that said attack would result in the sexual abuse of her person, then such woman would be justified in using such force as necessary, even to the extent of taking the life of her assailant, to protect her honor and chastity and her body from sexual abuse."

The instructions given by the court covering the question of self-defense were as follows:

"In this case the defendant sets up the ground of self-defense. Under the laws of the state homicide is justifiable when committed in the lawful defense of one's own person, when the person assaulted shall have reasonable ground to apprehend a design upon the part of her assailant to kill her or to do her some great personal injury, and there shall be imminent danger of such design being accomplished.

"If you believe from the evidence, to the extent of raising in your mind a reasonable doubt of the defendant's guilt, that at the time the defendant shot the deceased, the deceased was attempting to kill the defendant or to do her some great personal injury, or that the defendant had reasonable grounds to apprehend, and did apprehend, that the deceased was then and there about to kill her or to do her some great personal injury, and that the defendant had reasonable grounds to believe and did believe that the danger of death or great personal injury being inflicted upon her by the deceased was then and there imminent and impending, and that the defendant had reasonable cause to believe and did believe that it was necessary for her to shoot the defendant in order to avoid such impending danger to her, you will then find the defendant not guilty."

The defendant excepted to the refusal of the court to give the requested instruction, "for the reason that the same explains to the jury the meaning of the term 'great personal injury' as used by the court in his instructions and as applied under the evidence in this case, in that the same shows to the jury that the right of protection extends to, or the right to kill if necessary to protect the chastity of a woman," and because the court nowhere in his charge gives an instruction covering that subject, and the evidence requires such instruction. The exception urged to the instruction given is that "the same limits the right of self-defense to reasonable apprehension on the part of the defendant of death or great personal injury at the hands of the deceased, without defining or attempting to define to the jury what may be meant by the term 'great personal injury,' for the reason that under the evidence in this case there is necessity for a definition of the term 'great injury,' that the same may not be construed by the jury only to wounding or externally injuring the defendant," and because

nowhere in the charge of the court was such definition given.

Appellant contends that it is the duty of the court to instruct the jury upon all the law of the case; and, where there are several elements of justification, the court, must instruct as to each element, and should not select one or more and omit others. By section 2794 of the Code of 1915, it is "made the duty of the court in all cases, whether civil or criminal, to instruct the jury as to the law in the case, and a failure or refusal so to do shall be sufficient ground for a reversal of the judgment by the Supreme Court upon appeal or writ of error." Since the adoption of the Code of Civil Procedure, the court is under no obligation in a civil case to instruct the jury unless requested. Palatine Insurance Co. v. Santa Fe Mercantile Co., 13 N. M. 241, 82 P. 363. In a criminal case, however, it is still his duty so to do. Faulkner v. Territory, 6 N. M. 464, 30 P. 905; Aguilar v. Territory, 8 N. M. 496, 46 P. 342; Territory v. Baca, 11 N. M. 559 (2), 71 P. 460; Territory v. Guillen, 11 N. M. 194, 66 P. 527. While this is true, it is the duty of counsel for defendant to request the court to give such instructions as he thinks should be given, or to except to the instructions as given, because of their failure to cover the issues involved. State v. Padilla, 18 N. M. 573, 139 P. 143; State v. Johnson, 21 N. M. 432, 434, 155 P. 721; State v. Lucero, 24 N. M. 343, 171 P. 785. Upon proper request, the defendant in a criminal case is entitled to have instructions given upon every material issue raised by the evidence presented. As was said in Reed v. State, 3 Okl. Cr. 16, 103 P. 1070, 24 L. R. A. (N. S.) 268:

"The instructions should cover the whole case. The defendant is entitled to an instruction defining the law as applicable to his defense, if there is any competent evidence reasonably tending to substantiate that defense."

See, also, 14 R. C. L. pp. 793, 794, § 55.

The defendant is also entitled to have instructions given at his request upon his theory of the case, and

to have the law declared in reference to thé facts which he contends the evidence reasonably tends to show, and to an instruction defining the law as applicable to his defense, if there is any competent evidence reasonably tending to establish it.  14 R. C. L. pp. 797-800, §58.  And this is true in prosecutions for homicide, 13 R. C. L. p. 935, § 236.  Where self-defense is involved in a criminal case, and there is any evidence, although ·slight, to establish the same, it is proper for, as well as the duty of, the court to instruct the jury fully and clearly on all phases of the law of self-defense that are warranted by the evidence, even though such defense is supported only by the defendant's own testimony. 30 C. J. pp. 367, 368, § 618, and numerous cases cited in note 11; 13 R. C. L. pp. 933-935, §§ 235, 236; State v. Finkelstein, 269 Mo. 612, 191 S. W. 1002.  It is a general rule that where the court has fairly presented the issues to the jury, generally, this is sufficient, unless an instruction upon a particular phase of the case is requested.  But where one defense is mainly relied upon, and evidence is introduced to sustain it, it is error to omit to call the jury's attention thereto if properly requested.  16 C. J. pp. 1056, 1057.  While it is a duty to give an instruction upon a particular phase of the case, the statute in this state authorizes the court to modify such instructions (section 2797, Code 1915) and if the instructions of the court fully cover the subject of requested instructions, it is not error to refuse such requests.  Territory v. Kimmick, 15 N. M. 178, 106 P. 381.

"It is elementary, and thoroughly well settled in homicide cases as well as others that the court must charge on every issue or theory having any support in the evidence.  The instructions should distinctly set forth the law applicable not alone to the case as made by the evidence for the prosecution, but the case as made by all the evidence, and especially the law applicable to any favorable evidence comprising defensive matter in behalf of the accused." 13 R. C. L. pp. 933, 934, § 235.

Since the charge of the court as given correctly covered, in a general way, the issues of self-defense and

justifiable homicide presented in this case, and correctly stated the law in regard thereto, the right of the defendant to have the requested charge given by the court must depend upon whether there was sufficient evidence to cover the particular phase of self-defense thereby presented, and whether the charge as given correctly stated the specific elements constituting such phase, and the law applicable thereto. The evidence of the defendant in this case tended to show that on one occasion, in January, prior to the killing on February 16th, the deceased had at her home, and while her husband was absent, thrown his arms around her, and had only desisted when she told him to go away and that she was going to tell her husband, and that on the following day he returned to her home while her husband was absent and while she was washing the dinner dishes, and grabbed her and tried to take her to the bedroom, and only desisted when she started to take her rifle and told him if he did not get away she would fire; that upon the return of her husband she told him of the conduct of the deceased, and her husband ordered the deceased not to come upon his premises any more, and forbade him the friendship of the defendant; that between these dates and the day of the killing the deceased had, at times while her husband was away, waved at her and whistled to her when he would see her; that on the day of the killing, fearing an attack from the deceased, she took her children and her rifle to the washing place near the mill between the premises temporarily occupied by the deceased and her home, in order to protect herself from any attack of the deceased while she was washing her clothes; that when she went home at the noon hour she took the rifle, and upon her return in the afternoon to finish her washing she again took her children and her rifle to protect herself against the deceased; that shortly after her return to the mill, and while bending over her washtub in the act of washing her clothes, the deceased approached her from behind, and the first knowledge she had of his presence was when he grabbed her and hugged her; that

she told him to get away and he said he would not; that she jumped and took the rifle and told him to get away, that he again told her he would not, and raised an axe which he had upon his shoulder in a threatening position; that when she saw him with the axe in that position she again told him to get away, and he said he would not, and then she fired twice in rapid succession; that he was facing her when she fired the first shot, but that she did not know in what position he was when she fired the last shot, because she "was in anger and in fear, at the same time."

It will thus be seen that, according to the defendant's testimony, at the time of the shooting the deceased had an axe drawn upon her in a threatening position, and that at the same time he was refusing to go away and desist from whatever intention he may have had in mind at the time he assaulted her by placing his arm around her and hugging her. The defendant could well have inferred from this assault, when taken in connection with the two former assaults, that the purpose of the deceased was to commit a rape upon her, and she might have concluded, from the conduct of the deceased in raising his axe in a threatening position, that he intended to strike her therewith, or to frighten her in order to accomplish his design to rape her. The charge of the court merely stated that the defendant would be justified in killing the deceased when the killing was done in the lawful defense of her own person, or when she had reasonable ground to apprehend a design upon the part of her assailant to kill her or to do her some great personal injury. There was nothing in the evidence to indicate an intent to kill, except such as might have been deduced from the threatening position of the axe, and the jury might have inferred that this charge of the court only had reference to such injuries as the defendant apprehended the deceased intended to inflict upon her with his axe. It is, however, rather to be inferred from the testimony of the defendant that she claimed to have killed the deceased to protect herself against his assault with intent to rape, and that the

deceased was using the axe to compel her to submit
to his purpose through fear, rather than with any in-
tent on his part to kill her or wound her therewith
in an independent assault. While this testimony may
have authorized the court to submit the charge as
given, certainly the defendant had a right to have
submitted to the jury her theory of the case, that she
was seeking to defend herself from an attempted rape,
and to have the facts relative thereto stated with suf-
ficient clearness in the charge to distinctly present
this phase of her defense to the jury. See 2 Michie
on Homicide, p. 1397, § 283 (2); 2 Thompson on
Trials, § 2347; Powell v. State, 101 Ga. 9, 29 S. E.
309, 65 Am. St. Rep. 277; Pinder v. State, 27 Fla.
370, 8 So. 837, 26 Am. St. Rep. 83; Price v. State,
18 Tex. App. 474, 51 Am. St. Rep. 322; Osborne v.
State, 140 Ala. 84, 37 So. 105; Scott v. State, 46 Tex.
Cr. R. 85, 79 S. W..543; Bonner v. State, 29 Tex. App.
223, 15· S. W. 821; People v. Williamson, 6 Cal. App.
336, 92 P. 313.

We therefore conclude that, if the charge as re-
quested was correct in the application of the law of
justifiable homicide to the facts as presented in the
defense of the defendant, it was justified by the evi-
dence, and should have been given. In considering
the correctness of the requested charge, it should be
remembered that the purpose of this request was, not
to define any elements of crime against a defendant,
but merely to present correctly certain facts and
circumstances constituting a special defense, and to
apply the law thereto. We think that the defense of
one's person in case of a woman includes the protec-
tion of her chastity, as well as the protection of her
body from an assault with a deadly weapon. While it
might have been more accurate to state that such right
of defense included her right to protect herself from
an assault with intent to rape, under the facts in this
case we do not think that the use of the word "chas-
tity" in this connection could have misled the jury.
From its use they must necessarily have understood
that "the protection of her chastity" meant the pro-

tection of her person from an assault by the deceased
with intent to have illicit and forcible sexual inter-
course with the defendant. The word "chasity" is
defined in the Standard Dictionary as: "The state
or quality- of being chaste; sexual purity." And this
requested instruction in effect informed the jury that
a woman has the right to protect her sexual purity
against an attack, which, under the circumstances as
viewed by her, would lead her to reasonably apprehend
that such attack would result in the sexual abuse of
her person. If this requested charge had been di-
rected to the definition of the offense of rape, against
an accused, the use of the words "sexual abuse," in-
stead of the more technical words of the statute of
"an act of sexual intercourse with a female * * *
when her resistance is forcibly overcome," as defined
in section 2, chap. 110, Laws 1923, might be subject to
criticism. The fourth definition of the verb "abuse"
given in the Standard Dictionary is, "To violate; to
ravish," and the fifth definition of the noun "abuse"
given in the same work is, "Violation; rape." Since
the purpose of this charge was to acquaint a jury, not
presumed to be skilled in technical legal definitions,
with the defense of this defendant that she killed the
deceased to prevent his attempt at forcible sexual inter-
course, we think that it would, if given have suf-
ficiently accomplished this purpose, and that its lack
of technical accuracy, under the circumstances of this
case, affords no justification for the court's refusal
to give this or some equivalent charge.

For these reasons, we are of the opinion that the
objections of the state's counsel that the requested in-
struction was vague and indefinite and unsupported
by evidence are not well taken. Had the court pre-
ferred a more technical and less rhetorical statement
of this phase of her defense, it was his right under
the law to have conveyed its purport in language of
his own choice. But it was his duty either to give the
charge as requested, or a sufficient substitute in its
place. This he failed to do. The theory of the state
seems to have been that the defendant killed the de-

ceased, not in self-defense, but from anger and resentment occasioned by the fact that she had heard that deceased had gotten her into trouble, when she met him and accused him, he stated that both she and her informant were liars.  The court very fully presented this theory of the state in the following charge:

"The law of self-defense however does not imply the right to attack nor will it permit acts done in retaliation nor for revenge and if you believe from the evidence, beyond a reasonable doubt, that the defendant sought, brought on, or voluntarily entered into a controversy with the deceased for the purpose of wreaking vengeance upon him for some real or fancied injury, then the defendant cannot avail herself of the law of self-defense, and you should not acquit her on that ground.  It is for you to determine from all the evidence whether the claim of the defendant that she killed the deceased in self-defense is made in good faith or is a mere pretense."

The fact that the court made a specific application of the law to the facts constituting the state's theory of the case accentuates his duty to have given a charge likewise specifically applying the law to the facts constituting the defendant's defense.  We think that the exceptions of the defendant to the charge of the court as given, and to his refusal to give the requested charge, were sufficient, and that the court's failure to give this or some equivalent charge was substantial error.

[2] 2. The second exception of the appellant is to the refusal of the court to give her requested instruction No. 3, which is as follows:

"The court instructs the jury that in viewing the evidence in this case the jury should put themselves in the place of the defendant at the time of the alleged assault, and if you believe from the evidence that on two other occasions prior to the time of the death of the deceased, that the deceased attempted to assault the defendant, and at the time of the homicide the deceased had said or done some act that would lead the defendant to reasonably believe that he was about to again assault and try to ravish her, that the defendant need not wait until the deceased had actually attempted to ravish her, but she had the right to protect herself and her honor even to the taking of the life of the deceased if necessary."

The difference in this request and the one treated of in the previous division of this opinion is that the former presents the right of the defendant to defend herself by the taking of human life, if necessary to prevent an impending rape; while the instruction here considered relates to the right of the defendant to defend herself from an assault with intent to rape.   This instruction is to the effect that if the previous conduct of the deceased was sufficient to lead the defendant to reasonably believe that he was about to attack her with intent to have forcible sexual intercourse with her, then that the defendant need not wait until the actual assault had been made, but could defend herself if, from the apparent acts and circumstances, there was reasonable ground to believe that the deceased was again about to make an assault with such intentions.   The second subdivision of section 1471, Code 1915, defines "homicide" as justifiable "when committed in lawful defense of such person, * * * when there shall be reasonable ground to apprehend a design to commit a felony, or do some great personal injury, and there shall be imminent danger of such design being accomplished."

An assault is sometimes defined as "an attempt to commit a violent injury on the person of another." Georgia Penal Code, § 95; Words and Phrases, Assault.   The resulting battery is not a necessary constitutent element of the offense of assault.   2 R. C. L. p. 525.   Section 1480 of the Code of 1915 makes an assault with intent to commit rape a felony, and the right of self-defense would arise if there was imminent danger of the. accomplishment of such assault with such design.   And the defendant here did not have to wait until such actual assault had been accomplished after the clear intent appeared and the imminent danger of its accomplishment existed, and expose herself to the added danger of the actual accomplishment of the intended rape.   This is true for the reason that an assault with intent to rape is a felony as well as the offense of rape itself. This theory of defendant's defense should have been submitted to

the jury by the trial court.  If the charge requested
in the previous division of this opinion, or an equival-
ent charge presenting the application of the law to
the facts of defendant's defense as testified to by her,
had been given, it might have been sufficiently in-
clusive to have covered the charge here requested. But
in any event either the one or the other should have
been given.

[3] 3.  Another error alleged was to the admission
of certain evidence in the nature of a confession al-
leged to have been made by the defendant to one Jose
U. Ortega.  When asked whether he was present when
the defendant made any statement about the killing,
the witness stated that he was present when the de-
fendant made such a statement.  The district attorney
then asked the witness, ''Did she make a statement
voluntarily?'' to which he replied, ''Yes, sir.'' He then
asked, ''What did she say with reference to the killing
of Andres Lopez?'' This question was objected to on
the ground, among others, that no sufficient founda-
tion had been laid for the statement offered, there
being nothing upon which to predicate it except the
conclusion of the witness to the exclusion of all the
facts that the statement was made voluntarily.  The
court overruled this objection, and in answer to the
question, ''Just tell us what she said,'' the witness
stated:

"She said, when it was asked of the other witnesses as
to some relation or remarks stated by Veneriana, that he
was not guilty, that she had killed Andres Lopez of her
premeditation, of her own will, and that her husband had
nothing to do with it; that he hadn't advised her; that
he had nothing to do with it; and that she had done it."

A motion to strike this testimony was made after
its admission on the same ground that had been urged
to its admission, which was overruled by the court.
The question presented is whether this assertion of
the witness, in answer to an inquiry whether the
statement was voluntary, that it was, was sufficient
proof of that fact to authorize its admission.  When a

confession is sought to be introduced by the state, it is the duty of the judge to make a preliminary inquiry to determine whether the same was voluntary. A very proper practice in such cases is to inquire into the circumstances under which the confession was alleged to have been made, in the absence of the jury, and for the court to determine from such evidence whether the confession was voluntary. Warton's Cr. Ev. (10th. Ed.) § 622h. It is necessary for the state, when offering the confession, to show that it was voluntary before it can be admitted, and the burden of proof is upon the state to show that no improper inducement existed when the confession was made. Wharton's Cr. Ev. (10th Ed.) § 6221. The voluntary character of such evidence should be affirmatively shown before it is admitted. Wharton's Cr. Ev. (10th Ed.) § 622k. In the case of Territory v. Emilio, 14 N. M. 147, 89 P. 239, this question was discussed at page 155 et seq. It was there held that it was not error to admit the statement in the nature of a confession. In that case, however, all the circumstances leading up to and surrounding the making of the statement were in evidence, and the court held that there was nothing to indicate that the statement had not been voluntary made. In the case of State v. Armijo, 18 N. M. 262, 135 P. 555, the court held that the admission in evidence of a confession by the accused is to be determined by the fact of whether the same was made freely and without hope of benefit to this cause. In the opinion in that case, the court, at pages 267, 268 (135 P. 556), stated:

"The rule, in this regard, as enunciated by Mr. Bishop, in volume 1, New Crim. Proc. § 1220, meets with our * * * approval, and we believe it to be decisive upon the question. It is as follows: 'Sec. 1220. The judge, * * * and as a preliminary without which no confession can go to a jury, determines, on testimony laid before him, both for and against, whether or not to admit the particular one; the burden being on the prosecuting power that tenders the confession. His decision covers, besides the law, the fact, as to which it it not ordinarily to be disturbed or reviewed, and the jury can pass merely on the effect of the confession in evidence'."

While approving this rule, the court stated that—

"The statement appeared to be voluntary, positive evidence to that effect had been introduced and the appellant offered no evidence tending to challenge the voluntary characted of the alleged confession."

In the more recent case of State v· Archuleta, 29 N· M. 25, 217 P· 619, error was assigned upon the introduction of certain verbal admissions or confessions. Objection was interposed to the evidence on the ground that any statement that one of the defendants might have made at the time he was under arrest, without having been warned of its effect, was incompetent and irrelevant. It appears that the circumstances under which the statement was made were detailed by the witness, testifying to the admission or confession. In the opinion in that case, page 622, the court says:

"The objection was overruled and then the witness went on to detail the admission which Gonzales had made to him. It is to be observed that the objection made by counsel was not as to the voluntary character of the admission, but is based upon the naked proposition that, because the defendant was under arrest and was not warned of the effect his admission or confession might have, it was therefore incompetent. No attempt was made by counsel for appellants at the time to fully develop the circumstances surrounding the making of the admissions, nor did he later, on cross-examination of the sheriff, attempt to develop any facts to show that the admissions were not voluntary."

These three cases differ from the one at bar for the reason that here the circumstances under which the admissions were made, had not been brought out by the evidence, and specific objection was made prior to the introduction of the confession that no sufficient foundation had been laid for introducing the same, the only evidence thereof being the affirmative answer of the witness to the question of the district attorney, "Did she make a statement voluntarily?" Clearly, the statement of the witness that it was, was a more opinion or conclusion of the witness, and was not sufficient to show that the alleged confession was

voluntary. While it may be true that the subsequent statement by the witness of the circumstances under which this confession was made may have given sufficient details to authorize the court subsequently to determine that it was voluntary, yet, as a matter of proper practice, when the objection was made, the court should, before admitting this statement, have inquired into the circumstances under which it was made, and determined from them, and not from a mere conclusion or opinion of the witness, whether or not the same was voluntary. We think the practice, which is, as we understand it, very generally adopted, when a confession is offered, of requiring the jury to retire, and then make a full inquiry as to all the circumstances under which it was alleged to have been made, and from these determining its nature, whether voluntary or otherwise, is the proper and orderly method of inquiry, and it meets with our hearty approval.

Other exceptions of the defendant relate to the question of whether the corpus delicti has been proven and to the refusal of the court to give a requested instruction upon that subject. While it might have been well that the nature of the wound and its character should have been more fully inquired into, we think that the corpus delicti was sufficiently established, not only by circumstantial but also by direct evidence, to authorize the court in refusing to sustain the demurrer to the evidence upon this ground and to give the charge requested. Especially is this true where the defendant at no time claimed that she had not shot the deceased and upon the presentation of her defense, fully detailed such shooting and clearly established that she killed him.

For the errors above pointed out, the judgment of the lower court is reversed and this cause remanded, with instructions to grant a new trial, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.