Cheshire,
No. 5126.

### State *v.* David H. Prevost, Sr.

Argued June 4, 1963.

Decided July 30, 1963.

*William Maynard*, Attorney General, *Elmer T. Bourque*, Deputy Attorney General and *Irma A. Matthews*, Law Assistant (*Mrs. Matthews* orally), for the State.

*Howard B. Lane* and *Francis H. Ayer* (*Mr. Lane* orally), for the defendant.

KENISON, C.J. The defendant's principal contention is that the Trial Court abused its discretion in allowing the State to exercise one of its peremptory challenges to remove juror number four from the panel after he had been accepted by counsel for the State and the defendant but before the jury were sworn. The cases are conflicting on this point and the issue has not been decided in this jurisdiction. Orfield, Criminal Procedure from Arrest to Appeal 405 (1947); Annot. 3 A.L.R. (2d) 499; Vanderbilt, Judges and Jurors: Their Functions, Qualifications and Selection 71-74 (1956). The defendant's counsel has devoted the major portion of his brief to a careful analysis of the authorities with the full realization that there are divergent views on this issue. Note, Selection of Jurors by Voir Dire Examination and Challenge, 58 Yale L. J. 638 (1949); Thompson & Merriam, Juries, *c*. 10 (1st *ed*. 1882).

In the present case nine days were consumed in drawing the jury. Juror number four was drawn on Friday, September 22 and accepted by counsel for the State and for the defendant in addition to three other jurors who had previously been accepted. On Monday, September 25 and on Thursday, September 28, the State sought to challenge this juror for cause based on information acquired after the juror was drawn but this was denied by the Trial Court. Thereupon the State asked the Court to exercise its discretion in allowing it to exercise one of its peremptory challenges against juror number four, which the Court allowed subject to the defendant's exception.

While in the past the selection of jurors in both civil and criminal cases has generally not been a time-consuming procedure in this state, both counsel and the Court in the present case took unusual precautions to select an impartial jury. Fifth Report, N. H. Judicial Council, *pp*. 12-13 (1954); RSA 606:3, 4. Although authority has been delegated to the Superior Court to adopt rules for the drawing and impaneling of juries (RSA 519:20), no rules of general application have been adopted. *Shulinsky* v. *Railroad*, 83 N. H. 86, 87; *Lebrun* v. *Railroad*, 83 N. H. 293, 294; RSA 519:19.

The constitutional provision that it is the right of every citizen to be tried by "judges as impartial as the lot of humanity will admit" (N. H. Const., Pt. I, *Art.* 35th) has been given a broad interpretation. *Moses* v. *Julian*, 45 N. H. 52; *Opinion of the Justices*, 75 N. H. 613, 617. See 61 Colum. L. Rev. 792, 794

(1961). Specifically this constitutional provision for such impartiality of the judiciary "as the lot of humanity will admit" has been applied to jurors. *State* v. *Sawtelle*, 66 N. H. 488, 503; *Tuftonboro* v. *Willard*, 89 N. H. 253. As early as 1821 the thought was expressed in *Rollins* v. *Ames*, 2 N. H. 349, 351 in the following language: "It is highly important, that the conflicting rights of individuals should be adjusted by jurors as impartial as the lot of humanity will admit. That their minds should be free as the 'unsunned snow' from any previous impressions, and should receive no hue but what the law and the evidence at the trial may impart."

In denying the State's motions to challenge for cause juror number four, the Court indicated upon the conflicting evidence and statements of counsel that "it is close." In allowing the State to then use a peremptory challenge before the jury was sworn, it is evident that the Court thought that this procedure was the better course to follow in order to obtain an impartial jury under all the circumstances. The defendant contends the rule that should be applied is that a juror cannot be challenged peremptorily after he has been accepted by the party challenging or by both sides. The State does not contend that it has an absolute right to a peremptory challenge in this situation but that the Presiding Justice has discretionary authority to allow it.

"There is ample authority for the rule that it is within the discretionary power of the trial court to allow a party to exercise a peremptory challenge against a juror who has been accepted by the party challenging or by both sides; and such ruling on the part of the trial court permitting the challenge will stand on appeal unless an abuse of the court's discretion is shown." 5 Wharton's Criminal Law and Procedure, *s.* 1994 (1957). See also, Annot. 3 A.L.R. 2d 499, 508.

This rule has the support of recent cases. *State* v. *Brown*, 253 Iowa 658 (1962); *Nail* v. *State*, 231 Ark. 70 (1959) overruling earlier cases to the contrary. Furthermore this rule is consistent with the practice in this jurisdiction of placing the primary responsibility for the selection of an impartial jury on the court rather than counsel. *State* v. *Jones*, 50 N. H. 369; *State* v. *Comery*, 78 N. H. 6; Vanderbilt, Minimum Standards of Judicial Administration 197-198 (1949). This rule, applicable both to prosecution and defense, is based on the proposition that is is more important to select an impartial jury than it is to give either the prosecution or the defense a vested right in the

rejection of a juror. We adopt the rule that the Trial Court has discretionary authority before the jury panel is sworn to allow the State or the defendant to exercise a peremptory challenge of a juror that has been accepted by both parties.

The widow of the murder victim was cross-examined by defendant's counsel. Exception was taken to the refusal of the Court to allow cross-examination relative to a divorce libel she had brought against her deceased husband. It appeared that the divorce libel was filed one day and she requested her attorney to withdraw it the next day. Subject to exception, the libel for divorce was excluded by the Court. This was properly regarded as a collateral matter by the Trial Court having no necessary relevance to any main issue in the case. *State* v. *Hersom*, 84 N. H. 433. Exception was also taken to the refusal of the Court to permit cross-examination of the widow as to whether she was the person who had registered at various motels with the deceased Carleton Morrill. This was an attempt to prove through this witness that the wife of the defendant had so registered and thus was unfaithful to him. The Court asked counsel for the defendant whether there was any evidence to indicate that the defendant had knowledge of these incidents prior to the shooting. Counsel replied as follows: "It is reported to us that prior to the shooting it was reported that his [defendant's] wife told someone, who in turn told someone who in turn told him, prior to the shooting" that she was staying at various places with the murder victim. Examination of the witness was finally excluded until such time as other evidence should be introduced to establish the suspected infidelity of the defendant's wife. Evidence of infidelity on the part of the defendant's wife would have a bearing on the state of mind of the defendant prior to the shooting only if he had knowledge of such infidelity. No error is perceived.

Police officers who arrested the defendant were permitted to testify as to his sanity based on their personal observation. This was permissible under the doctrine of *Hardy* v. *Merrill*, 56 N. H. 227. The defendant's counsel sought to ask these police officers on cross-examination whether certain actions by Prevost were those of a normal or sane man. This cross-examination was excluded on the ground that their answers would not be helpful to the jury. This ruling was proper. *State* v. *Hause*, 82 N. H. 133; 2 Wigmore, Evidence (3d *ed.*) *s.* 679; 7 Wigmore, Evidence (3d *ed.*) *s.* 1918.

The defendant objected to the failure of the Court to read to the jury RSA 607:3 (supp). The reserved case contains the following comment in regard to this request: "In Respondent's Proposed Reserved Case it was stated that the respondent 'seasonably objected to . . . (e) the refusal of the Court to charge as requested as to the disposition of the case if the respondent was found not guilty by reason of insanity.'"

"The Court finds that this allegation is not conformable to the facts, as any such request was not made in writing or in the presence of the stenographer. The charge, however, did not in any way include such an instruction; and at the conclusion of the charge no exceptions whatever were taken to the charge either as given or to the refusal of the Court to have given any particular requested instruction."

In criminal cases waiver of a request is less readily presumed than in civil cases. Assuming that the request had been properly and timely made, it is clear from reading the charge of the Court as a whole that there was no error in it and no reason for the jury to be confused. The Court specifically pointed out that the jury could return a verdict of murder in the first degree or murder in the second degree, or manslaughter in the first degree, or not guilty, or not guilty by reason of insanity. The reading of RSA 607:3 (supp) was not required. Wiehofen, Mental Disorder as a Criminal Defense 365 (1954).

*Exceptions overruled.*

All concurred.