490 P.2d 1236

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Johnny JAMES, Defendant-Appellant.**
**No. 693.**

Court of Appeals of New Mexico.
Nov. 5, 1971.

. Walter F. Wolf, Jr., Schuelke & Wolf, Gallup, for defendant-appellant.

David L. Norvell, Atty. Gen., C. Emery Cuddy, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

COWAN, Judge.

The defendant has appealed to this court from a judgment and sentence following his conviction of burglary and of buying, procuring, receiving or concealing stolen property.

We reverse as to the defense of insanity instruction and affirm as to the finding of voluntariness of the confession.

Defendant urges under point 1 that the trial court erred in its refusal to sustain a motion to suppress his confession. Defendant argues that his statement or confession was not voluntary because he was detained for approximately 24 hours without charges being filed against him, without his appearing before a magistrate and without a warrant being issued for his arrest. He further argues that the statement resulted from promises and inducements of leniency for his wife, that the statement was taken from him while he was insane, and that it was taken after he had advised the police that he did not want to make any statement and had refused further interrogation from policemen without an attorney being present.

Following receipt of information connecting the defendant and his wife with burglary of a trading post in Gallup, New Mexico, officers of the Gallup Police Department called at the place of business where defendant worked. He voluntarily accompanied them to the police station where he was placed under arrest as a parole violator following a telephone call made by one of the officers to the parole officer who advised that he had a "hold order" on the defendant. This occurred at approximately 4:30 P.M. on August 10, 1970. Defendant was advised of his rights but told the officers that he did not want to talk to them; that he wanted to wait and see a lawyer. No attempt was made

to interrogate him further at that time nor was a lawyer provided him then.

Defendant's wife had been placed in jail also. The following day, August 11, the defendant notified the officers that he wanted to talk with them. He was brought down from his cell and confessed to the crimes for which he was convicted, stating that his wife was not involved.

The record is not clear as to when the defendant learned that his wife was in jail, but he testified that the officers told him his wife would be freed if he confessed. The officers denied that any promises or inducements whatsoever were made to him. Defendant did not request an attorney at that time. He admitted that his rights had again been made clear to him before he gave his statement on August 11.

At a hearing, out of the presence of the jury, to determine the admissibility of the statement, the two officers testified, as did the defendant. There was no evidence that the circumstances surrounding the arrest, the fact that the defendant had been in jail overnight without arraignment, or the fact that he had no lawyer, in any way rendered the statement involuntary. That he was insane at the time he gave it is also unsupported by the evidence. There remains only the question of whether his statement was induced by a promise of freedom for his wife. We think it was not.

The trial court ruled, as a matter of law, that the confession was voluntary before submitting it to the jury under proper instructions requiring the jury to consider any questions concerning whether it was voluntary, as well as its truth or the weight to accord it. The disputed facts were resolved in favor of the state and no constitutional right was denied the defendant. State v. Gutierrez, 79 N.M. 732, 449 P.2d 334 (Ct.App.1968); Pece v. Cox, 74 N.M. 591, 396 P.2d 422 (1964).

Under point 2 defendant complains that the trial court erred in giving instruction number 5 and in refusing defendant's requested instructions 1, 2 and 4, relating to plaintiff's defense of insanity at the time of the alleged crimes.

The court's instruction number 5 is:

"The Defendant has also entered a plea of Not Guilty by reason of Insanity, and it is your function to determine the issue raised by this plea, whereby he alleges that he was insane at the time of the commission of the offense.

"The law presumes that the defendant was sane. That presumption may be rebutted, but is controlling until overcome by a preponderance of evidence. A preponderance of evidence is such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. The burden of proving insanity is on the defendant; that is to say, it is incumbent upon him to establish by a preponderance of evidence that he was insane at the time of committing the offense charged.

"The issue for you to determine is whether or not the defendant was sane or insane at the time of the commission of said offense. Although you may consider evidence of his mental state before and after that time, such evidence is to be considered only for the purpose of throwing light upon his mental condition as it was when the offense was committed.

"Insanity, as the word is used in these instructions, means such a diseased and deranged condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of his act and of distinguishing between right and wrong in relation to the act with which he is charged and that disease of the mind prevented the defendant from committing the offense.

"The test of accountability is this: Did the party have sufficient mental capacity to appreciate the character and quality of the act? Did he know and understand that it was a violation of the rights of another, and in itself wrong? Further, you must decide whether dis-

ease deprived the defendant of whatever will power he happened to have. Stated another way, before you can find the defendant not guilty by reason of insanity, you must be satisfied that at the time of committing the act, the accused, as a result of disease of the mind: (a) Did not know the nature and quality of the act; or (b) Did not know that it was wrong; or (c) Was incapable of preventing himself from committing it.

"You are instructed that if the defendant had the capacity to appreciate the nature and quality of the act, that he did know that it was wrong and was capable of preventing himself from committing it, he was sane under the law and is responsible to the law for the act thus committed."

The defendant urges that this instruction is erroneous because it requires that the defendant prove his insanity by a preponderance of the evidence; it failed to advise the jury as to the ultimate burden of proof on the issue of insanity; the words "deranged condition of the mental faculties" should not have been used; the disjunctive term "or" should have been used in the fourth paragraph thereof instead of the conjunctive term "and"; it defines the test of accountability improperly; and it should have advised the jury to first determine the defendant's guilt or innocence of the crime charged without consideration of the issue of insanity.

We agree that the court's instruction number 5 was erroneous for all of the reasons above set forth. Defendant's claim of error under point 2 is meritorious.

In State v. Roy, 40 N.M. 397, 60 P.2d 646 (1936), the Supreme Court definitively sets forth the basis for, and procedure under, a plea of not guilty by reason of insanity at the time of the commission of the offense, in the following words:

"A plea of insanity by one accused of the commission of a crime may be likened to a plea of confession and avoidance in a civil action. The defendant admits that he committed the act or acts charged against him, but seeks to avoid a judgment or penalty on account of such act or acts, and to absolve himself from liability, on a sound legal theory.

"In a criminal case the prosecutor may rest upon the presumption of sanity in establishing a prima facie case. It is then incumbent upon the defendant to overcome that presumption by competent evidence and to reasonably substantiate his plea of insanity. Such evidence must reasonably tend to show that at the time of the commission of the crime the defendant was incapable of distinguishing right from wrong so as to excuse him from the legal consequences of his act.

"Stated another way: The state is obliged to establish the defendant's guilt beyond a reasonable doubt. Crimes involving a guilty intent cannot be successfully prosecuted against one charged who is insane, because an insane person does not have the capacity to form a criminal intent. Therefore, the burden of proof is upon the state to prove that the defendant is sane beyond a reasonable doubt. In the first instance, this burden is met or satisified by the presumption that the defendant is sane.

"It then becomes the duty of the defendant and upon him is the onus or burden of going forward with evidence to overcome this presumption.

"When the defendant has put in evidence reasonably tending to show him insane, the problem is then to determine whether it is sufficient to take the case to the jury. This is a question for the court to determine. Therefore, when all the evidence is in, if there has been adduced competent evidence reasonably tending to support the fact of insanity urged by the defendant as a defensive issue in the case, it is the duty of the court to instruct on the question of insanity. Otherwise, the court may properly refuse such instruction. 14 R.C.L. pp. 799–800, § 58; State v. Martinez, 30 N.M. 178, 230 P. 379."

This rule was followed in State v. Moore, 42 N.M. 135, 76 P.2d 19 (1938), where it was said:

> "'If the only evidence tending to prove insanity is such that it is disbelieved and disregarded by the jury, then the presumption of sanity remains and should have the same effect as if no evidence had been introduced tending to prove insanity. The jury might well be instructed that in weighing the evidence they may not consider the presumption, yet, if uninfluenced by the presumption they reach the conclusion that the evidence tending to show defendant's insanity is not entitled to credit and is disregarded by them, the presumption of sanity may then be regarded as remaining in force. * * *'
>
> "The sanity of the accused must be proven by the state just like any other material fact. The determination of that fact from the evidence is left to the jury. * * *"

This rule of law has been consistently followed in this state and we see no reason to depart from it. State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969). Nothing said in State v. Torres, 82 N.M. 422, 483 P.2d 303 (1971), is inconsistent with what we have said here.

Prior to 1954 this jurisdiction had adopted the rule from the McNaughten Case, 10 Clark & F. 199, 8 Eng. Reprint, 718, the so-called "right and wrong test". In State v. White, 58 N.M. 324, 270 P.2d 727 (1954), the court extended the McNaughten rule to include a third test, stating:

> "For the purpose of clarifying the rule of law applicable to the defense of insanity in criminal cases in this jurisdiction, we state it to be as follows: 'The jury must be satisfied that, at the time of committing the act, the accused, as a result of disease of the mind * * * (a) did not know the nature and quality of the act or (b) did not know that it was wrong or (c) was incapable of preventing himself from committing it. * * *'"

 Satisfactory proof of the existence of either one or more of the three tests is sufficient to bar a guilty verdict. The definition of insanity, as set forth in *White*, is the proper one upon which to base instructions and establishes the rule in this jurisdiction where the question goes to the defendant's plea of insanity at the time of the commission of the crime. State v. Upton, 60 N.M. 205, 290 P.2d 440 (1955).

We further hold that, when the issue of insanity has been properly raised, the jury should be instructed to consider first whether the defendant is guilty of the crime charged, without consideration of the question of insanity. Should the defendant be found not guilty, there would be no necessity for further consideration. Should the defendant be found guilty, then the jury would determine whether the defendant is not guilty by reason of insanity.

The trial court's instruction number 5 being erroneous, defendant's conviction and sentence is reversed and a new trial awarded him.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.