505 P.2d 436

STATE of New Mexico, Plaintiff-Appellee,

v.

John Ashton VICTORIAN, Defendant-Appellant.

No. 9473.

Supreme Court of New Mexico.

Jan. 19, 1973.

Rehearing Denied Feb. 14, 1973.

Louis G. Stewart, Jr., Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Victor Moss, James H. Russell, Jr., Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

OMAN, Justice.

Defendant was convicted on two counts of first degree murder and sentenced to life imprisonment for each, with the sentences to run concurrently. He has appealed. We affirm.

Defendant asserts eight separately stated points and four subpoints upon which he relies for reversal. We shall consider these points and subpoints in the order of their presentation in the briefs. The first is a claim that the trial court:

"* * * was without authority and jurisdiction to conduct the jury trial of defendant, because the state and the defendant had previously stipulated to a change of venue [from Bernalillo County to Santa Fe County] and the court by written order had approved that stipulation."

The stipulation and order were filed on April 5, 1967. At the time of commencement of trial on August 24, 1971, a different trial judge was presiding over the case and different attorneys were representing defendant. From the filing of the complaint, a motion and an order on January 3, 1967 to the certification on April 26, 1972 of the record for the purpose of perfecting this appeal, all proceedings were held in the district court of Bernalillo County. At no time were the proceedings in the district court ever questioned. The matter of venue was never raised, except for the reference thereto in the stipulation and order filed on April 5, 1967 and a Motion for Change of Venue, apparently in defendant's handwriting, filed August 4, 1970. This motion was directed against the district court of Bernalillo County, and claimed undue bias and prejudice by the court against defendant. Some time between July 26, 1971 and August 16, 1971 the case came under the control of a different district judge and remained under the control of the replacing judge through all subsequent proceedings, except for two orders directing the issuance of warrants for air transportation and witness fees entered by the presiding district judge in Bernalillo County. Venue in Bernalillo County, wherein the murders were committed, was first questioned in this Court on appeal. The question presented is as above recited and its resolution is dependent entirely upon the effect of the stipulation and the order approving it.

A change of venue to Santa Fe County was never in fact accomplished. The case was never assigned and the record thereof never transferred to the district court of Santa Fe County. The trial was held in the district court of Bernalillo County without question ever having been raised or objection made thereto. No claim is made, and the record fails to reflect, that there was difficulty in selecting a fair and impartial jury, or that defendant failed to get a fair and impartial trial because it was held in Bernalillo County.

Defendant was tried in the proper district as provided in Amendment 6, Constitution of the United States, and in the proper county and district as provided in Art. II, § 14, Constitution of New Mexico. He waived whatever rights to a change of venue, if any, which he had acquired under the court's order approving the stipulation, when he proceeded to trial in the district court of Bernalillo County without ever having raised a question as to venue or having objected to being tried in that court. Compare Bernstein v. Bernstein, 73 N.M. 365, 388 P.2d 187 (1964); Heron v. Gaylor, 53 N.M. 44, 201 P.2d 366 (1948); State v. Shroyer, 49 N.M. 196, 160 P.2d 444 (1945); State v. Archer et al., 32 N.M. 319, 255 P. 396 (1927); State v. Balles, 24 N.M. 16, 172 P. 196 (1918); State v. Holloway, 19 N.M. 528, 146 P. 1066 (1914).

By his second point defendant contends the trial court abused its discretion in admitting into evidence a photograph of the body of each victim. These photographs are not before us on this appeal, but the record shows they were taken of the bodies in the hospital to which they were removed after their discovery in the grocery store which the victims had operated. The one victim was apparently dead when discovered, but the other was still alive. She died shortly thereafter.

It is defendant's position that the photographs were irrelevant to any issue in the

case, and the trial court abused its discretion in failing " * * * to weigh the probative value of the evidence against the possibility of risk of prejudice of the Defendant. * * *"

▪ Defendant concedes the matter of the admission of photographs into evidence rests largely in the discretion of the trial court, and its decision on this question ordinarily will not be disturbed on appeal. State v. Sedillo, 76 N.M. 273, 414 P.2d 500 (1966); State v. Upton, 60 N.M. 205, 290 P.2d 440 (1955); State v. Johnson, 57 N. M. 716, 263 P.2d 282 (1953); State v. Webb, 81 N.M. 508, 469 P.2d 153 (Ct.App. 1970). Defendant was standing on his defenses of not guilty and not guilty by reason of insanity. The photographs were visual explanations and corroborations of testimony concerning the shootings and the deaths of the victims resulting therefrom, and were admissible for these purposes. State v. Sedillo, supra; State v. Upton, supra; State v. Johnson, supra; State v. Webb, supra. See also State v. Horton, 57 N.M. 257, 258 P.2d 371 (1953).

▪ The record clearly shows the court in ruling on the admissibility of these photographs did exercise its discretion. The burden was on defendant to show an abuse of discretion by the trial court. State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966); State v. Holden, 45 N.M. 147, 113 P.2d 171 (1941); State v. Coca, 80 N.M. 95, 451 P. 2d 999 (Ct.App.1969). This he has failed to do.

The next contention of defendant is that the trial court erred in not giving his requested instruction to the jury that it must first find beyond a reasonable doubt that he committed all the essential elements of the offenses charged before considering his plea of insanity. He relies upon State v. James, 83 N.M. 263, 490 P.2d 1236 (Ct. App.1971), wherein it was stated " * * * the jury should be instructed to consider first whether the defendant is guilty of the crime charged, without consideration of the question of insanity. * * *"

One of the court's instructions was in part as follows:

"8. If you are convinced beyond a reasonable doubt that the defendant committed the acts charged, there is another matter which you must consider before you can find him guilty. The defendant has entered a plea of not guilty by reason of insanity, thereby alleging that he was insane at the time of the commission of the offense. * * *"

▪ Although this instruction did not expressly advise the jury that the first question it was to decide was whether defendant committed all the essential elements of the offense charged before considering the plea of insanity, the above quoted language from the court's instructions clearly implies this order of consideration. However, even if there should be doubt about this, the essential requirements of the instructions, insofar as the question now being considered is concerned, were that the jury was properly instructed as to the burden of proof, the essential elements of the crime charged, and the issue of insanity. The jury was instructed upon these issues, and the fact that it may possibly have considered the issue of sanity, before considering whether defendant had in fact committed the essential elements of the crimes charged, cannot be said to be reversible error. In order to convict defendant, the jury was required to consider each of these issues, and their order of consideration by the jury cannot logically be said to be essential to their correct consideration and determination. Insofar as State v. James, supra, states to the contrary, the decision in that case is overruled.

▪ Although not expressly raised by his point relied upon for reversal and not argued, it is suggested by defendant that the trial court failed to instruct on all the essential elements of insanity. We disagree. The instruction given by the trial court on the elements of insanity is in accord with State v. White, 58 N.M. 324 at 330, 270 P.2d 727 (1954); State v. Roy, 40

N.M. 397 at 404, 60 P.2d 646 (1936); State v. James, supra.

Defendant next claims the trial court erred in refusing to set aside the jury verdict because of improper and prejudicial comments by the district attorney in the closing argument.

He has quoted approximately two pages of the argument which he claims was designed to mislead the jury, calculated to inflame the passions and prejudices of the jury, and which injected into the case the false issue of defendant's disposition if he were acquitted. He also urges that a reading of the entire closing argument demonstrates "the prosecutor was acting in extreme bad faith."

██ Even were we to concede the argument in some particulars exceeded the bounds of propriety, defendant is in no position to complain. No objections were made to any of the arguments about which he now complains on appeal. If he felt the remarks by the prosecutor exceeded the bounds of propriety, the burden was on him to make objection at the time the remarks were made, and not wait until the trial was concluded and then seek relief by asking that the verdict be set aside or the judgment entered thereon be reversed on appeal. Torres v. Territory, 16 N.M. 615, 121 P. 27 (1911); State v. Carmona, 84 N.M. 119, 500 P.2d 204 (Ct.App.1972); State v. Polsky, 82 N.M. 393, 482 P.2d 257 (Ct.App.1971). We do not agree that the argument of the prosecutor shows he "was acting in extreme bad faith." We do not, however, wish to be construed as departing from the requirement that the prosecutor must exercise good faith and reasonable caution to avoid unfairness. State v. Polsky, supra.

Defendant next contends the trial court erred in denying his motion for a directed verdict of acquittal and his subsequent motion to set aside the verdict on the ground there was insufficient evidence to establish his sanity beyond a reasonable doubt.

Two psychiatrists and a psychologist testified for defendant. The first psychiatrist's testimony was given on March 21, 1967 at a hearing into defendant's then mental capacity to stand trial. This witness testified defendant suffered from a "schizophrenic reaction, chronic undifferentiated type, severe with delusions," from psychosis, and from incompetency. Although this witness gave it as his opinion that defendant was suffering from these conditions in 1963 and again in 1967, the witness at no time gave an opinion as to defendant's mental capacity or state on December 24, 1966, the date of the commission of the two murders for which he was convicted.

The second psychiatrist testified that in his opinion on December 24, 1966, defendant was a schizophrenic, paranoid type, suffering from active psychosis, and not then able to know the nature and quality of his acts, if he did in fact commit the killings. He also testified that on December 24, 1968, defendant was on medication, his psychosis was under control, and there was no reason at that time for defendant to be committed; electroencephalograms showed defendant had suffered no organic brain damage; the witness guessed defendant could be all right and a couple of days in jail could then cause him to become psychotic; when he first examined defendant in January 1967, defendant had then been in jail three and one-half weeks following the killings on December 24, 1966; it is possible defendant was not psychotic on December 24, 1966; a person can be psychotic and not legally insane; although defendant may have been psychotic on December 24, 1966, this would not be sufficient to establish his insanity as of that time; upon examining defendant on May 24, 1971, he found defendant "was not mentally ill"; and one suffering from schizophrenia is not necessarily insane.

The psychologist, who examined defendant on January 6, 9 and 11 of 1967, testified the results of his examination indicated defendant did not comprehend the nature of the charges brought against him, was unable to aid in his own defense, was psychotic at that time by reason of schizo-

phrenia, and an educated guess on his part would be that defendant's condition on December 24, 1966 was the same as he found it in January 1967.

The testimony of each of the three experts was at most opinion evidence as to defendant's claimed insanity on December 24, 1966, and their opinions were not free from doubt, as shown by the foregoing summary of portions of their testimony. In addition, two lay witnesses who had known defendant prior to December 24, 1966 and saw him thereafter testified they observed nothing unusual or abnormal about his condition. The police officer who interrogated defendant when arrested on December 26, 1966 stated he observed nothing to indicate defendant was slow or retarded, and that defendant appeared to comprehend everything asked of him.

■ The jury was not required to accept the opinions of the psychiatrists and psychologist as to defendant's probable mental condition and capacity on December 24, 1966, and to reject the testimony of the non-expert witnesses. Nor was the trial court bound to accept the opinions of the three experts and direct a verdict for defendant. The testimony of the experts was not the only competent evidence touching on defendant's mental condition, and their testimony was not conclusive on this issue. State v. Smith, 80 N.M. 126, 452 P.2d 195 (Ct.App.1969). Insanity is a question of fact which ordinarily is decided by the trier of the facts. State v. Botello, 80 N. M. .482, 457 P.2d 1001 (Ct.App.1969). Contrary to defendant's contention, the evidence does not point unequivocally to his insanity at the time of the commission of the offenses for which he was convicted.

Defendant next asserts error on the part of the trial court in admitting evidence of the conviction of one of the psychiatrists of selling dangerous drugs. This psychiatrist is the one mentioned above who had testified in 1967 at a hearing on defendant's then competency. A transcript of his testimony given at that hearing was offered by defendant at the subsequent trial and was received into evidence pursuant to stipulation. After the testimony was read to the jury, one of defendant's attorneys announced that the date and time in 1967 when the testimony was given should be called to the jury's attention. The prosecutor thereupon announced the State wished to establish that the witness had, since the 1967 hearing, been convicted in Federal Court of the unlawful sale of dangerous drugs. Defendant objected on the ground that this conviction occurred some two or two and one-half years after the 1967 hearing. The court instructed the jury that if the doctor were present and testifying in person these matters mentioned by defendant's attorney and the prosecutor would have been developed as a part of his testimony.

■ Defendant concedes that evidence as to the doctor's conviction was properly admissible under § 20–2–3, N.M.S.A.1953 (Repl.Vol. 4, 1970). However, he urges the trial court was obliged to weigh the probative value of the doctor's conviction against the prejudicial effect thereof upon defendant, and that the court failed to exercise its discretion in conducting this weighing process. He relies upon State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966); State v. Holden, 45 N.M. 147, 113 P.2d 171 (1941); State v. Sibold, 83 N.M. 678, 496 P.2d 738 (Ct.App.1972); State v. Waller, 80 N.M. 380, 456 P.2d 213 (Ct.App.1969); State v. Coca, supra. In each of these cases the defendant was being questioned as to his prior convictions. In the case now before us, it was not the defendant's credibility which was being attacked. We are unwilling to extend to every witness the same protection extended defendant under the rules announced in the cited cases. See State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969), in which it was assumed, but not decided, that the rule applicable to cross-examination of an accused as a witness was also applicable to cross-examination of a non-accused witness.

■ In any event, it is not necessary every time a trial court is called upon

to exercise its discretion to announce it is exercising or has exercised its discretion, and pursuant to that exercise has reached a stated decision. It is apparent the trial court did exercise discretion in deciding whether to sustain or reject defendant's objection.

Defendant next contends:

"This court should apply the doctrine of fundamental error herein because the guilt of the [defendant] is so doubtful that it should shock the conscience of the court to allow it's [sic] conviction, since substantial justice was not done in the trial court and [defendant] was denied due process of law."

He relies upon four separately stated subpoints as support for his position. The first is a claim that the trial court should have conducted a hearing as to the voluntariness of a confession before admitting it into evidence.

█ The initial fallacy in this contention lies in the fact that there was no confession, but rather a statement by defendant as to the length of time he had owned a gun. This was at most an admission. State v. Lucero, 70 N.M. 268, 372 P.2d 837 (1962); State v. Lindsey, 26 N.M. 526, 194 P. 877 (1921); 2 Wharton's Criminal Evidence, § 337 at 10 (12th Ed. 1955). A preliminary hearing out of the presence of the jury as to the voluntariness of this admission was not necessary. State v. Lucero, supra. There was evidence as to the voluntariness of the statement, and the State adduced other competent evidence as to the ownership of the gun by defendant. No fundamental error was committed by the trial court.

In his second subpoint, defendant urges the trial court erred in permitting the district attorney to cross-examine the second psychiatrist, to whom reference is above made, as to whether defendant was committable to the State Mental Hospital as of May 1971. This doctor had examined defendant in May 1971.

█ No objection was made by defendant at trial to the questioning. It is de-

fendant's position, however, that the questioning by the district attorney injected a false issue into the case, and prejudice to him resulting therefrom was so great as to constitute fundamental error. He relies upon State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969). The decision in the Lopez case does not support defendant's contention here. In that case objection was made at trial to the testimony; no question of fundamental error was involved; and the claimed error was held to be harmless, if in fact error was committed. Defendant's position is not supported by the decision in either State v. Nickens, 403 S.W.2d 582 (Mo.1966) or Farris v. Commonwealth, 209 Va. 305, 163 S.E.2d 575 (1968), which cases are also relied upon by defendant here and which were relied upon by the defendant in State v. Lopez, supra.

Defendant's third subpoint is his claim of error on the part of the trial court in failing to instruct the jury as to what disposition could be made of him if the jury should find him not guilty by reason of insanity.

█ Here again defendant failed to present the question to the trial court. He tendered no instruction on the question and did not otherwise raise the issue for the trial court's consideration. Even if we were to concede the jury should have been instructed as the defendant now claims, he failed to preserve the error. However, refusal to give such an instruction is not reversible error, and certainly not fundamental error. State v. Chambers, 84 N.M. 309, 502 P.2d 999 (1972). See also Campbell v. State, 216 Ark. 878, 228 S.W.2d 470 (1950); State v. Moeller, 50 Haw. 110, 433 P.2d 136 (1967); State v. Park, 159 Me. 328, 193 A.2d 1 (1963); Nelson v. State, 129 Miss. 288, 92 So. 66 (1922); State v. Garrett, 391 S.W.2d 235 (Mo.1965); State v. Bracy, 215 N.C. 248, 1 S.E.2d 891 (1939); State v. Prevost, 105 N.H. 90, 193 A.2d 22 (1963); People v. Adams, 26 N. Y.2d 129, 309 N.Y.S.2d 145, 257 N.E.2d 610 (1970); State v. Daley, 54 Or. 514,

103 P. 502, 104 P. 1 (1909); Commonwealth v. Gable, 323 Pa. 449, 187 A. 393 (1936); Rollins v. Commonwealth, 207 Va. 575, 151 S.E.2d 622 (1966); State v. Hood, 123 Vt. 273, 187 A.2d 499 (1963); State v. Music, 79 Wash.2d 699, 489 P.2d 159 (1971); Lonquest v. State, 495 P.2d 575 (Wyo.1972).

In his final subpoint, defendant claims:

"The trial court erred in failing to instruct the jury that the offense of armed robbery required a specific intent to commit, because the [defendant], a mentally ill person, could not form the requisite intent to commit said offense and as a result should not have been convicted of felony-murder."

It is obvious there is an internal inconsistency in this point, as well as in the argument presented by defendant thereunder. If, as urged, defendant was incapable of forming the claimed requisite intent to commit the offense, then there could have been no reason to instruct thereon. If the statements in the subpoint and in the arguments in support thereof be accepted as correct, defendant was entitled to a directed verdict in his favor. However, he urged no right to a directed verdict for this reason, requested no such instruction as he now claims the jury should have been given, and at no time made claim in the trial court of his right to such an instruction.

The final point relied upon for reversal is defendant's claim that " * * * errors committed by the trial court, in their aggregate, had the combined effect of denying appellant a fair trial and resulted in a miscarriage of justice and deprived him of due process of law."

The doctrine of cumulative error is recognized in New Mexico. Nelson v. Cox, 66 N.M. 397, 349 P.2d 118 (1960); State v. Polsky, supra. However, defendant must fail under this point for the same reasons defendant in the Polsky case failed in his efforts to rely on the doctrine of cumulative error, to wit: (1) the trial court did not commit the many errors defendant claims were cumulative, and (2) a reading of the entire record demonstrates he received a fair trial. See also State v. Mireles, 84 N.M. 146, 500 P.2d 431 (Ct.App. 1972); State v. Valdez, 83 N.M. 632, 495 P.2d 1079 (Ct.App.1972).

The judgment and sentence should be affirmed.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.