511 P.2d 556

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Johnny JAMES, Defendant-Appellant.**

**No. 955.**

Court of Appeals of New Mexico.

May 16, 1973.

Certiorari Denied June 15, 1973.

Ellis J. French, Window Rock, Ariz., for defendant-appellant.

David L. Norvell, Atty. Gen., Ronald Van Amberg, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HERNANDEZ, Judge.

The original opinion by the court in this cause appears in State v. James, 83 N.M. 263, 490 P.2d 1236 (Ct.App.1971).

Defendant on the retrial was convicted of burglary (§ 40A–16–3, N.M.S.A.1953 (2d Repl.Vol. 6)) and buying, procuring, receiving or concealing stolen property (§ 40A–16–11, N.M.S.A.1953 (2d Repl.Vol. 6)) and the enhancement of his sentence pursuant to § 40A–29–5, N.M.S.A.1953 (2d Repl.Vol. 6) the Habitual Criminal Act. He appeals.

Defendant asserts two points for reversal: (1) "The trial court erred in its refusal to sustain defendant's motion for a directed verdict of not guilty by reason of insanity," and (2) "The defendant committed no crime for which a life sentence may be imposed."

We affirm.

At the trial defendant called only one witness, a psychiatrist. The doctor, as an expert, was asked a hypothetical question as to whether at the time of the two inci-dents in question, defendant was capable of knowing the nature and quality of his acts and whether he was capable of preventing himself from committing those acts. Part of his answer is as follows:

" . . . I believe that while he may many times appear to be quite well-organized, that other times he is so preoccupied with the thoughts that I have tried to describe to you, of a defective self-image, of his differences from other people, that he considered normal, that I believe then that at the time of commit-' ting the act for which he is being tried, he was so preoccupied with these thoughts and feelings, that he was unable to—that he didn't perceive the nature and quality of the act, and that he was very probably unable to prevent himself from committing it in any case."

He had previously testified in part:

"I believe that he—that the stress of his life became ´such that he periodically would verge on psychosis. That is, in a world which would become so preoccupied and so overwhelming that he would lose touch with what was going on around him. Well, there's a diagnosis in psychiatry called Borderline Syndrome. That means a person who isn't clearly psychotic, and definitely not clearly neurotic, but periodically acts in a way that would—that's very close to being psychotic. By psychotic I mean unable to perceive the extent of the world clearly, and act in an organized and effective way."

The state offered no expert testimony on the issue of defendant's sanity. However, the prosecution did call two lay witnesses who testified about their observations of defendant's behavior at various times both before and after the time of the two offenses.

The first of these witnesses testified in part as follows:

"Q. Mr. Jaramillo, I believe you testified that you have known Johnny James for ten years, about that time?

"A. Yes, sir.

"Q. You have seen him often over that period of time?

"A. Yes, sir, I have.

"Q. Well, during the time that you have known him, and specifically during the time that you were working on this case, did he seem well-organized to you, well-oriented?

"A. Yes, he has.

"Q. Did he know where he was when you talked to him?

"A. Yes, sir.

"Q. Did he know why he was there?

"A. Yes, sir.

.    .    .    .    .    .

"Q. Did he know who you were?

"A. Yes, sir.

.    .    .    .    .

"Q. (By Mr. Rich) During the times that you interviewed him, did he show any signs of insanity?

"A. No, sir."

The second witness was a deputy sheriff who had an opportunity to observe defendant quite frequently after his arrest and while he was incarcerated awaiting trial. He testified that:

"The old jail was divided into two separate parts. There was a drunk tank and a felony tank in which all persons that were awaiting felony charges, or bound over for District Court were kept, and Mr. James was more or less the ring leader. He was the boss at the felony tank. He did what he wanted to do, you know, and he told everybody else, you know, how they were going to do it."

When asked specifically about defendant's mental state—whether the witness saw "any manifestations of insanity during that period?"—the response was "No sir, I can't say that I did." And when he was asked a similar question he responded "No, he did not appear to be insane."

At the conclusion of the trial defendant moved for a directed verdict of not guilty by reason of insanity, which was denied. Defendant contends that this was error be-cause the testimony of state witnesses "deals only with the general question of defendant's sanity and not with his state of mind on the dates of the offenses alleged." He goes on to argue "Their testimony not only does not rebut but in fact does not in any way conflict with Dr. Ellis' testimony that defendant was not commitable." Defendant concludes by saying "that once evidence of insanity has been introduced sufficient to create a reasonable doubt as to his sanity, the state must prove beyond a reasonable doubt that the defendant was sane at the time of the act charged."

■ This last statement is, of course, a correct statement of the burden of proof on the issue of insanity in criminal cases (See State v. James, supra, overruled in part on other grounds, State v. Victorian, 84 N.M. 491, 505 P.2d 436 (1973); State v. Roy, 40 N.M. 397, 60 P.2d 646 (1936)); but defendant's contentions do not compel a reversal for the trial court's failure to direct a verdict of not guilty by reason of insanity. A directed verdict is not proper where there is substantial evidence to support the conviction, or, as here, to support a determination of sanity. State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967), and "in ruling on a defense motion for a directed verdict, the evidence must be viewed in the light most favorable to the State." State v. McKay, 79 N.M. 797, 450 P.2d 435 (Ct.App.1969).

■ On the record presented here, could defendant's sanity be resolved by the trial court as a matter of law without submitting the issue to the jury? We conclude it could not. Defendant's arguments disregard the rule in New Mexico that a jury is not required to accept expert opinion and to reject contradictory non-expert opinion. State v. Victorian, supra. "Insanity is a question of fact which ordinarily is decided by the trier of facts." State v. Victorian, supra. State v. Gardner, 85 N.M. 104, 509 P.2d 871 decided Mar. 23, 1973; State v. Botello, 80 N.M. 482, 457 P.2d 1001 (Ct.App.1969). In State v.

Moore, 42 N.M. 135, 76 P.2d 19 (1938), the Supreme Court held that:

> "It is for the jury to reach a conclusion as to the sanity or insanity of the accused. The province of the experts is to aid the jury in reaching a conclusion. Their opinions are not to be taken as conclusive. The judgments of experts or the inferences of skilled witnesses, even when unanimous and uncontroverted, are not necessarily conclusive . . . . The testimony of an expert is purely his opinion and is not testimony as to facts and is not conclusive, even when uncontradicted."

■ Clearly, the trial court in ruling on defendant's motion for a directed verdict, any more than the jury, was not required to rely exclusively on the expert testimony to the exclusion of all other testimony on the subject of defendant's sanity. The testimony of the psychiatrist was at best equivocal. He testified that the defendant "was very probably unable to prevent himself from committing [the act]." Later, he testified that the defendant was "unlikely" to be able to prevent himself from committing the act. His testimony with respect to a specific diagnosis for defendant's mental condition was that defendant suffers from a personality disorder and a "borderline" psychosis and that defendant's psychotic symptoms appear only "periodically."

This testimony was contradicted by two lay witnesses one of whom had known defendant for "ten years" and who agreed that defendant's behavior over that period of time seemed "well-organized" and "well-oriented." The second lay witness stated that he had observed defendant in jail sometime after the crime and that defendant "did not appear to be insane." See State v. Victorian, supra.

■ Having reviewed both the testimony of the expert and the testimony of the two lay witnesses we cannot conclude that the defense testimony on defendant's sanity was so persuasive or compelling, in the face of the lay testimony offered by the prosecution, that defendant's sanity could have been resolved by the trial court as a matter of law. The issue of sanity was properly submitted to the jury and the motion for directed verdict of acquittal by reason of insanity was properly refused.

■ As a collateral matter in his discussion of the issue of the court's refusal to direct a verdict, defendant appears to argue that the trial court's instructions Number 14 and 19 were incorrect. Instruction Number 14 is not properly before this court since the objection to that instruction was raised by the State and not by defense counsel. At trial defense counsel did not object to the instruction but instead ·deemed it "an appropriate instruction."

Instruction Number 19 reads as follows:

> "You are instructed that the testimony of· laymen who observed the defendant's conduct may be received on the question of the defendant's sanity."

Defendant contends that this instruction "deals only with the defendant's present or permanent insanity and not with his state of mind at the time of the offenses charged." However, even if this instruction were defective, its defects were cured by the trial court's giving defendant's requested instruction Number 3 which stated:

> "The question of the defendant's sanity or insanity has reference to his mental condition at the time of the act charged. Therefore, although you may consider evidence of his mental condition before and after that time, such evidence is to be considered only for the purpose of aiding you in determining his mental condition as it was at the time of the act charged."

There was no error in the trial court's instructions.

■ Defendant's second point on appeal goes to the propriety of the life sentence imposed on defendant under the Habitual Criminal Act, § 40A–29–5, supra. Defendant argues that his sentence is a punishment for the "status" of being a habitual

offender rather than a sentence imposed after the commission of some unlawful act. Defendant contends that Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L. Ed.2d 758 (1962) makes the punishment for a "status" unconstitutional because it violates the cruel and unusual punishment clause of the United States Constitution. We do not agree. We have previously held that the Habitual Criminal Act is constitutional and that sentences imposed under it are valid and proper. State v. Gonzales, 84 N.M. 275, 502 P.2d 300 (Ct.App. 1972). The "status" issue was thoroughly discussed in that case and we see no need for further comment here.

Affirmed.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.