533 P.2d 578

STATE of New Mexico, Plaintiff-Appellee,

v.

David G. VIGIL, Defendant-Appellant.

No. 9953.

Supreme Court of New Mexico.

March 21, 1975.

Jones, Gallegos, Snead & Wertheim, John Wentworth, Santa Fe, for defendant-appellant.

David L. Norvell, Atty. Gen., George A. Morrison, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MONTOYA, Justice.

On February 13, 1973, the Rio Arriba County grand jury returned an indictment against defendant David G. Vigil, charging him with murder in violation of § 40A–2–1, N.M.S.A., 1953 (2d Repl. Vol. 6, 1972). The case was heard before a jury in the District Court of Rio Arriba Coun-

ty. The jury found defendant guilty of murder in the first degree and, on August 20, 1973, judgment and sentence were entered.

On appeal the initial point asserted by defendant is that the trial court committed reversible error when, at the time of cross-examination, it refused defendant the right to inspect Police Officer Martinez' prior written statements. From the record, it appears that there were three police reports prepared. The first was produced after commencement of cross-examination of Officer Martinez during the State's case in chief. The second report was prepared specially for the grand jury. It was sealed by the trial judge and was never made available to defendant. The third, or "supplementary report," was not produced until after both parties had rested and Officer Martinez was recalled by the State as a rebuttal witness. Thus, defendant is contending that the failure to make available the report "prepared for the grand jury" and the "supplementary report," which was not produced for defendant until rebuttal by the State and not for cross-examination during the State's case in chief, was reversible error. We agree with defendant.

The law in New Mexico as to the duty of supplying the defendant with prior written statements of a witness was presented in State v. Herrera, 84 N.M. 365, 366, 503 P.2d 648, 649 (Ct.App.1972), where the Court of Appeals stated:

"* * *. When a witness has made a prior written statement about that which he is called to testify, the accused is entitled to an order directing the prosecutor to produce the statement for inspection of the defendant. Any other result denies the defendant the right to confront the witnesses against him. Mascarenas v. State, 80 N.M. 537, 458 P.2d 789 (1969)."

This procedure involves a fundamental right preserved to criminal defendants by both the U.S.Const. Amend. VI and the N.

M.Const. Art. II, § 14. It should be obvious that:

"'* * *. The state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and, in particular, the state should have no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as throroughly impeached as the evidence permits.' State v. Morgan, supra, at 67 N.M. 292, 354 P.2d 1006; * * *."

State v. Vigil, 85 N.M. 735, 735–736, 516 P.2d 1118, 1118–1119 (1973).

■ The State contends that these written statements contain no contradictions, inconsistencies or omissions in respect to Officer Martinez' oral testimony, and thus would be of no assistance to defendant; but it is the prerogative of defense counsel to examine a witness' prior statement and determine for himself the use to be made of it on cross-examination.

In relation to the written statement "prepared for the grand jury," it was ruled below that it should be withheld from defendant on the basis of maintaining the secrecy of the grand jury. But, in the recent case of State v. Felter, 85 N.M. 619, 620, 515 P.2d 138, 139 (1973), we stated that:

"* * *. We agree with the decision of the Court of Appeals under the particular facts of that case, and agree with the statement in its opinion that 'once the witness has testified at the criminal trial about that which he testified before the grand jury, the accused is entitled to an order permitting examination of that portion of the witness' grand jury testimony relating to the crime for which defendant is charged.' "

This position was reaffirmed and clarified in State v. Vigil, supra.

■ We perceive no reason why this principle should not be extended to include written statements prepared for the grand jury and submitted to it for its considera-

tion. To do otherwise would be to deprive defendant of his right to fully confront and cross-examine the witnesses against him. Thus, once a witness has testified at trial concerning matters which were included in a written statement prepared for the grand jury, the defendant is entitled to a copy of the written statement submitted to the grand jury relating to the crime with which defendant is charged. ·

An examination of the contents of the sealed report contains matters not testified to by one of the officers preparing and signing the police report. It also contains expression of opinions and conclusions of the officers preparing the report, and contains information relative to the alleged results of a lie detector test administered to the defendant by a third party. It expressed the opinion of the officers that defendant killed the deceased, and included their appraisal of the defendant's reputation as being that of a cold blooded and ruthless individual.

We would be less than candid if we did not express our strong disapproval of the practice which permits the submission of this type of a report to a grand jury considering the possible indictment of a defendant who is the subject matter of such a report. We trust that this was a single and isolated incident, and that extreme care will be exercised to prevent its recurrence. Fairness and simple justice demand no other course. We, therefore, hold that counsel for defendant was entitled to a copy of such report in order to properly cross-examine the⁹ testifying officer who signed the report.

In order to properly evaluate the other contentions advanced by defendant in support of reversal, it is necessary to consider the evidence introduced at the trial. A summary of the pertinent evidence, when viewed in a light most favorable to the State, is to the effect that defendant, two other companions and the deceased were drinking beer together in at least two bars in the Espanola area and in the defendant's automobile on the night of January 18,

1973. There is testimony that the deceased became involved in fights with the other companions, and that the defendant sought to stop at least one of those fights and to protect the deceased. The defendant, after the bars closed, gave deceased and the other companions a ride, was heard to say to the deceased that the other companions would not hurt him. After dropping off the other two companions at their respective homes, he drove the deceased in the direction of Abiquiu, but only took him as far as the intersection of Highways 84–285, about fifteen miles south of his home. There is testimony that both deceased and defendant were drinking Schlitz beer out of bottles in the defendant's automobile. The evidence also reveals that the body of the deceased was found on the morning of January 19, 1973, at a rest stop on Highway U.S. 84, south of Ghost Ranch, over twenty-five miles north of the intersection where defendant claims he dropped him off. It was testified that the deceased, or victim, died as a result of three frontal .38 caliber bullet wounds. Defendant admitted he had purchased some .38 caliber ammunition in April of 1972 for a Mr. Lloyd Maestas. The testimony is undisputed that a fingerprint of the defendant was found on a Schlitz beer bottle, which was located near the body of the deceased.

Defendant also contends that it was reversible error for the court to refuse defendant's requested instruction No. 30, which provided as follows:

"When the evidence fails to show, on the part of the accused, any motive to commit a crime, such lack of motive is a circumstance in favor of the innocence of the party accused, and in this case, if the Jury finds, upon a careful examination of all the evidence, that it fails to show any motive on the part of the Defendant to commit the crime charged in the Indictment, then such failure to show motive should be considered by the Jury as a circumstance in favor of the accused."

As long ago as Territory v. McGinnis, 10 N.M. 269, 277–278, 61 P. 208, 211 (1900), this court recognized the significance of motive.

"* * *. The question whether the defendant himself did or did not commit the crime for which he was under indictment being in issue, the fact of the existence or non-existence of the motive for such an act was a relevant and very important inquiry. * * *"

In State v. Orfanakis, 22 N.M. 107, 159 P. 674 (1916), the court stated that, in the situation where some proof of motive is presented, an instruction as to the effect of the absence of motive is improper and should be refused; while in State v. Romero, 34 N.M. 494, 498, 285 P. 497, 498 (1930), the court rejected an instruction which stated that the absence of evidence as to motive "affords a presumption of the innocence of the defendant," but went on to say that:

"* * *. The authorities which hold such an instruction proper go no further than to say that the absence of proof of motive 'is a circumstance which the jury may take into consideration.' [Citation omitted.]"

■ A review of the record reveals that there was absolutely no evidence tending to prove the existence of any motive on the part of defendant. In fact, the record is replete with evidence indicating a complete lack of motive on defendant's part, including evidence that defendant acted as the protector of the deceased the night prior to his death. In the particular situation, as is present here, where all the evidence is circumstantial and there is no proof of motive, it was incumbent on the trial judge to present a properly framed instruction on motive, as was defendant's requested instruction No. 30, supra. Such action is in accordance with past New Mexico case law and is compelled by § 41–23–41(a), N.M.S. A., 1953 (Supp.1973):

"The court must instruct the jury upon all questions of law necessary for guidance in returning a verdict."

We agree with the court in Trobough v. State, 119 Neb. 128, 134–135, 227 N.W. 443, 445 (1929), where it is stated that:

"* * *. *The importance of motive, therefore, suggests the necessity of proper instructions to the jury concerning the same,* and while absence of all evidence of motive in a case may be conceded to be circumstances favorable to the defendant, still it is not the province of the court to instruct the jury of the weight or bearing to be given to any particular circumstance; *yet this court is committed to the doctrine that the defendant is entitled to an instruction on the subject of motive, at least to the extent that the absence of all evidence of motive is a circumstance that should be considered by the jury in connection with all other facts and circumstances in determining the guilt or innocence of the accused.* * * *" (Emphasis added.)

It was likewise appropriately stated by the California District Court of Appeals, Third District, in People v. Rodis, 145 Cal.App.2d 44, 47, 301 P.2d 886, 888 (Ct. App.1956), in dealing with the propriety of an instruction on motive, as follows:

"* * *. Again, as the court noted in the Richards case [People v. Richards, 74 Cal.App.2d 279, 168 P.2d 435], the issue of motive is important, particularly in a case where the identity of the perpetrator of the offense is based largely on circumstantial evidence. The court there stated, 'While motive constitutes no element of the crime itself, it must be conceded that in cases where circumstantial evidence is largely relied upon for conviction, as in this case, then motive becomes a matter of most earnest inquiry. [Citation omitted.] * * *.'"

■ The question of lack of substantial evidence to support the verdict is also raised by defendant. The position of this court, in reviewing a question of substantial evidence in a criminal conviction, is that:

"* * *, this Court will view the testimony as a whole in the light most fa-vorable to the state, resolving all conflicts therein and indulging in all permissible inferences in favor of the verdict, of conviction. [Citation omitted.] Where, however, the evidence must be buttressed by surmise and conjecture, rather than logical inference in order to support a conviction, this Court, as final arbiter charged with the protection of civil liberties, cannot allow such conviction to stand. [Citation omitted.]"

State v. Romero, 67 N.M. 82, 84, 352 P.2d 781, 782 (1960). The burden resting upon the state in a case such as this, where the evidence is purely circumstantial, was clearly stated in State v. Slade, 78 N.M. 581, 583, 434 P.2d 700, 702 (1967):

"It is axiomatic that the burden rests upon the state to prove each and every essential element of the offense charged beyond a reasonable doubt. It is not necessary, however, that the charge be established only by direct evidence. Circumstantial evidence is sufficient if the circumstances point unerringly to the defendant and are incompatible with and exclude every reasonable hypothesis other than that of his guilt. [Citations omitted]."

■ When the evidence is viewed in the appropriate manner with all conflicts resolved in favor of the State, it definitely appears from the record that the facts and circumstances here do not unerringly point to defendant's guilt of first degree murder.

■ Defendant was charged and convicted of first degree murder, which also contains the lesser-included offenses of second degree murder and voluntary manslaughter. According to § 40A–2–1, supra:

"A. Murder in the first degree consists of all murder perpetrated:

(1) by any kind of willful, deliberate and premeditated killing;

* * *

"B. Murder in the second degree consists of all other murder.

"* * *."

**350**

And according to § 40A-2-2, N.M.S.A., 1953 (2d Repl. Vol. 6, 1972):

"A. Malice is express malice, when there is the deliberate intention, unlawfully to take away the life of a fellow creature and which is manifested by external circumstances capable of proof.

"B. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show a wicked and malignant heart."

Based on New Mexico case law, a finding of express malice is mandatory in order to support a conviction of first degree murder, while implied malice will suffice for second degree murder. State v. Rushing, 85 N.M. 540, 514 P.2d 297 (1973); State v. Ulibarri, 67 N.M. 336, 355 P.2d 275 (1960). And finally, voluntary manslaughter is defined by § 40A-2-3, N.M.S.A., 1953 (2d Repl. Vol. 6, 1972):

"Manslaughter is the unlawful killing of a human being without malice.

"A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion.

" * * * ."

 As a matter of law based upon the record before us, there is an absence of evidence to support a conviction of murder in the first degree. The state has presented no evidence, circumstantial or otherwise, as to express malice on the part of defendant. There was no showing of a "deliberate intention, unlawfully to take away the life of a fellow creature." Therefore, the judgment and sentence must be reversed. As to the requirement of implied malice for second degree murder, it is recognized in New Mexico that malice may be implied from the use of a deadly weapon. State v. Anaya, 80 N.M. 695, 460 P.2d 60 (1969). In the present case, a deadly weapon was obviously used.

 The determination of the weight and effect of the evidence, as well as inferences to be drawn from both direct and circumstantial evidence, are matters reserved for the determination of the triers of fact, in this case, the trial jury. The jury resolves the questions of credibility of witnesses, and the weight to be given to their testimony. It can reject the defendant's version of an incident. The question remains as to whether there is sufficient evidence to support the submission to the jury of the issue of second degree murder or voluntary manslaughter. In view of our holding, that the case must be reversed as to conviction of first degree murder, we do not feel that we should dispose of those issues on the merits. There were no objections made to the instructions given by the court on those issues, and inasmuch as the cause is being remanded for a new trial, it will be the duty of the trial court to determine whether there is enough evidence to warrant the submission of those issues to the jury.

Therefore, in view of the foregoing, the judgment and sentence of the trial court must be reversed and the cause remanded for a new trial.

It is so ordered.

McMANUS, C. J., and MARTINEZ, J., concur.