833 P.2d 1155

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Edmundo OROSCO, Defendant– Appellant.**

No. 11816.

Court of Appeals of New Mexico.

July 2, 1991.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Jerry Todd Wertheim, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Judge.

Convicted of attempted criminal sexual penetration of a minor as an accessory and of criminal sexual contact of a minor as an accessory, defendant appeals, raising the following issues: (1) sufficiency of the evidence to convict where defendant contends only prior inconsistent statements identi-fied defendant as a perpetrator; (2) abuse of discretion by district court in admitting the prior inconsistent statements when child victim appeared unable to respond to cross-examination; (3) ineffective assistance of counsel based on failure to call the principal to testify and to demand disclosure of notes a witness used to testify at trial; (4) abuse of discretion by district court in determining victim competent to testify; (5) trial court error in giving improper jury instructions; (6) trial court error in allowing jury to see defendant in handcuffs; and (7) trial court error in denying defendant's motion for new trial. Issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct. App.1985). Although not raised, we also discuss a question of possible fundamental error: when defendant's conviction of criminal sexual contact of a minor under the age of 13 as an accessory must be set aside and remanded for new trial in light of our supreme court's recent decision in *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991) which was decided after the parties filed their briefs. We believe this question involves a significant question of law under the constitution of the United States and also an issue of substantial public interest that should be determined by the supreme court. *See* NMSA 1978, § 34-5-14(C)(1), (2) (Repl.Pamp.1990). We are concerned that *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973) compels a decision by this court with which the supreme court ultimately might not agree. Additionally, as our discussion points out, resolution of a part of the issue may involve a choice between what appears to be conflicting decisions by the supreme court. We first set forth the factual background, then discuss the issues defendant raises. Finally, we address the issue we certify.

*FACTS*

In determining whether evidence supports a criminal charge or an essential element thereof, the reviewing court must view the evidence in a light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences

therefrom in favor of conviction. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). While we apply that standard in reviewing the substantiality of the evidence, in order to understand defendant's challenge, it is necessary at the outset to indicate conflicts between the victim's testimony at trial and his recitation of the incident made to others before trial. The victim, age six at the time of the incidents giving rise to the charges, lived with his mother and her boyfriend, defendant Orosco. While caring for victim, defendant and his friend, Manuel Villegas, took the boy to a bar. On numerous occasions since, the victim relayed that he was sexually molested in the bathroom and elsewhere in the bar by Villegas. The victim stated that Villegas made him touch Villegas' penis with his mouth, and that Villegas touched the boy's penis. However, the victim's facts about the incident have been inconsistent regarding the role the defendant played in the molestations.

Before trial, the victim was questioned about the incident, and received counseling. At trial, three witnesses were called to relate what the victim had told them prior to trial.

The victim told Nurse Jennifer Bruce that both defendant and Villegas had laughed at him in the bathroom because of what they had made him do. The child told her he went to the bathroom with Villegas, that Villegas told him to "lick his dick," that the child did that and some sticky stuff came out of his penis. The child said Villegas then gave him a quarter and the child went out and told defendant what happened. The victim had drawn a picture of the incident for her showing defendant standing next to Villegas. The child told Bruce that he was frowning in the picture he drew because he was scared. He said defendant and Villegas were smiling because they were happy.

The victim spent five sessions with Yolanda Morales, a psychologist, learning about the truth and how to tell it. After three sessions, he told Ms. Morales that defendant had held his head in an attempt to force him to have oral sex with Villegas. He said both men may have touched his penis, and that both threatened him. Morales testified that the child stated that the events occurred in the bathroom.

After counseling with Ms. Morales, the victim told Detective Steve Gonzales that defendant pushed him into the bathroom, and both defendant and Villegas pulled down his pants. Victim said the defendant held his head while Villegas attempted to have oral sex with him.

We note that at trial the child testified that he had told the truth to the police, to Morales, and to Bruce. Moreover, the child specifically stated that he had told the truth before when he had said that defendant had helped Villegas and had himself touched the child.

However, at trial, the victim related a different story regarding the defendant's role in the incident. The victim testified that when Villegas attempted to pull down his pants at the bar, defendant tried to pull his pants up. Defendant also told Villegas to stop, and became angry with him. When asked about his prior statements, the victim stated that he had told the truth to Ms. Bruce, but that he did not remember saying that defendant had helped. He then said that he had made a mistake at an earlier interview when he said that defendant had touched him.

Additionally, the defense presented expert testimony from Dr. Luis Natalicio, who had evaluated the boy for competency. He testified that the interview techniques used by Ms. Morales caused him to lose the ability to discern the difference between truth and falsehood. According to this witness, by Ms. Morales questioning the victim repeatedly using closed questions, she signaled to him when the right answer had not been given. As a result, the interview sessions had contaminated the victim's perceptions.

Additional facts will be provided in the discussion that follows.

DISCUSSION

1. *Sufficiency of the Evidence*

Defendant claims the district court erred in refusing to grant defendant's motion to dismiss for lack of evidence. While con-

ceding that prior inconsistent statements constitute substantive evidence, *see State v. Maestas*, 92 N.M. 135, 144, 584 P.2d 182, 191 (Ct.App.1978), defendant argues that the statements alone are insufficient to support a conviction. Defendant does not challenge the admissibility of the victim's prior inconsistent statements as related by the three witnesses; rather, he claims that because the prior inconsistent statements lack corroboration they are insufficient to sustain the convictions.

We answer defendant's challenge to the sufficiency of the evidence by holding, first, there was direct testimony from the victim at trial sufficient to support the convictions and, second, to the extent that prior inconsistent statements may have been relied upon by the jury, they were sufficiently corroborated as required under *Maestas*. Additionally, we will discuss what appears to be a misconception of the law by both the state and defendant as to what is required in order to convict as an accessory.

At the trial the victim was asked by the prosecutor if he remembered telling other people that defendant helped Villegas and that defendant himself had touched the child. The victim said that he had and that this was the truth. Taken in context, "helping Villegas" refers to touching Villegas' penis with the child's mouth, and defendant touching the child refers to touching the child's penis. While there was other evidence from the victim contradicting this, it was up to the jury to resolve these conflicts. This testimony constitutes direct evidence that supports the jury's verdicts.

There were also prior inconsistent statements made by the victim to others which constituted substantive evidence to support the verdicts. Before examining the sufficiency of that evidence, we first discuss briefly the law relating to prior inconsistent statements.

*Maestas* implicitly holds that while prior statements may be admitted and given substantive effect, that does not mean that they suffice as the sole basis for a conviction. *Id.* at 145, 584 P.2d at 192 (citing from 4 J. Weinstein & M. Berger, *Wein-*

*stein's Evidence* ¶ 801–76.1 (1977)). That case suggests that the question of the sufficiency of the evidence remains, as the due process clause of the fourteenth amendment may require a minimal standard of evidentiary support to sustain a conviction. In *Maestas*, this court determined that corroborative evidence sufficed to provide that evidentiary support and therefore upheld the conviction.

In *Maestas*, the victim suffered aggravated battery at the hands of someone. The question was who. At trial, the victim was either unable or unwilling to identify the defendant as the assailant. Shortly after the assault, however, she had told her mother and sister that it was defendant who had beaten her. The testimony of the mother and sister was admitted and constituted substantive evidence of the prior statement of the victim. We held that those prior hearsay statements were corroborated by several additional facts, including the fact that victim lived with defendant in his home for a week; that no other person bore any unfavorable relationship with the victim that would lead to a severe beating; that defendant presented no witness nor any evidence that cast doubt upon the truth of the prior statements made; and that no evidence of defendant's good character was presented. We said these facts and circumstances corroborated the truth of the prior statements made by the victim, so that the prior statements were not the sole basis for the conviction.

In the case before us, the jury heard testimony that victim's mother learned of the incident when she and defendant were fighting. This occurred several weeks after the molestations. The mother awakened the victim to learn what occurred. As a result, she reported the crime to the police, implicating both the defendant and Villegas. Mother then ordered defendant out of the house. It was not until shortly before trial that mother resumed her relationship with defendant. She then filed an affidavit asking that the charges against defendant be dropped. At trial, the victim related the story, for the

first time, that defendant attempted to help him when Villegas lowered his pants. While the jury might have believed mother threw defendant out of the house and reported him to the police out of anger unrelated to any alleged misconduct with the child, it could also have believed she took these actions because the victim implicated defendant when questioned by his mother.

Additionally, Officer Gonzales testified that the child's mother had also told him that the child had been molested by defendant. Mother did not deny this. In addition, there are statements attributable to defendant which are incriminatory. For example, the mother testified the defendant told her that her son was "capable of doing certain things." It was this statement that led the mother to questioning her son and then calling the police. That statement by defendant seems quite inconsistent with that of a person who had tried to protect the child from sexual contact by another adult. Similarly, the mother testified on cross-examination that before the incident defendant had complained to her that the child was curious about seeing men's private parts and was always after him when he went to the bathroom. She went on to say the defendant had told her that Villegas had offered the child money to grab Villegas' private parts. Defendant did not say anything about trying to stop this. Again, the jury could find that conduct inconsistent with someone who was offended by it and tried to stop it. Also, defendant told Detective Gonzales that the child followed Villegas into the bathroom to watch him urinate and defendant went to the bathroom with them but did not touch the child or see Villegas touch the child. Thus, defendant did not tell the police the "exculpatory" story that the child told at trial. A jury can infer a consciousness of guilt from that.

Finally, we cannot ignore the surrounding circumstances of the events—the role of defendant as caretaker for the child that evening, the fact that defendant took the child to a bar, the unlikelihood that defendant could not prevent Villegas from engaging in the misconduct if defendant really wished to prevent it, and the bar environment itself. These circumstances support the version of events given by the child prior to trial and render it likely that the jury found the child's trial version to be incredible. The child's prior statements describe the events as occurring in the bathroom at the bar. His trial testimony was that the events did not occur in the bathroom but at the bar (apparently the bar counter) itself. The jury was entitled to wonder about the probability of Villegas committing the misconduct in the open part of the bar and how it could be that defendant was unable to prevent the misconduct. Indeed, the incredibility of the child's testimony at trial strongly corroborates the child's prior inconsistent statements.

In summary, there was ample direct evidence that Villegas engaged in improper sexual contact with the child at the bar in defendant's presence during a time when defendant was charged with the care of the child. Given the nature of the sexual contact, one could rationally find it highly unlikely that the contact could have occurred without the approval, even encouragement, of the child's caretaker, the defendant. In this circumstance, the victim's statements to the three outsiders and to his mother to the effect the defendant was involved in the misconduct are infinitely more credible than the astonishing trial testimony of the child to the effect that defendant actually tried unsuccessfully to prevent the misconduct. The jury could view the coincidence of the child's trial testimony with the mother's reunion with defendant as highly suspicious.

■ We now address what appears to be a misconception on the part of both sides with respect to the legal responsibility of the defendant under the circumstances of this case. While we do not rely on this alternative theory, since it was not raised or briefed, we discuss it to make clear we do not agree with the parties' view of the law.

In making his argument, defendant assumes that to be convicted as an accessory it was necessary for the state to prove defendant took an active role in the at-

tempted criminal sexual penetration and criminal sexual contact of the minor by Villegas. In other words, both the defendant and the state assume that, in order to be an accessory, defendant had to either restrain the victim as Villegas molested him or otherwise assist in the commission of those crimes or attempted crime in some direct affirmative manner. Thus, both the state and defendant seem to concede that defendant's mere presence during the molestations would not suffice to convict him as an accessory, even though defendant had charge of the care of the minor and took no steps to protect him. Although we have pointed to evidence of direct involvement by defendant, we determine if the parties' position correctly states the law.

NMSA 1978, Section 30-1-13 (Repl.Pamp.1984) provides:

> A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or has been acquitted, or is a child under the Children's Code[.]

The district court gave the appropriate instruction for aiding and abetting. *See* SCRA 1986, 14–2822 (1986 Recomp). Both the statute and the uniform jury instruction require, in order to convict a person as an accessory, that the state prove beyond a reasonable doubt that the defendant intended that the crime be committed, that the crime was committed and that the defendant helped, encouraged, or caused the crime to be committed.

Although SCRA 1986, 14–2823 (1986 Recomp.) provides mere presence and even mental approbation, if unaccompanied by outward manifestation or expression of approval, is insufficient to establish that the defendant aided and abetted a crime, the use note provides that no instruction on that subject shall be given. The committee commentary notes that the language of that instruction is taken from *State v.*

*Ochoa,* 41 N.M. 589, 72 P.2d 609 (1937), but that no instruction is necessary to guide the jury because the subject is covered by the essential-elements instruction.

In *State v. Luna,* 92 N.M. 680, 594 P.2d 340 (Ct.App.1979), discussing aiding and abetting, this court said that there must be a community of purpose, a partnership in the unlawful undertaking. We added that this community of purpose may be shown by evidence of acts, conduct, words, signs, or any means sufficient to incite, encourage, or instigate the commission of the offense. Do those requirements of proof mean that a person entrusted with the care and safekeeping of a child, such as presented by the facts in the case before us, has no responsibility and cannot be held criminally liable for failure to take affirmative action reasonably necessary to prevent harm to the child? In other words, can a defendant, charged with responsibility of caring for a minor, escape criminal liability as an aider or abettor as long as he takes no direct affirmative action to incite, encourage, or instigate the commission of the offense?

It is noteworthy that none of the cases in New Mexico defining what must be proved to establish the crime of accessory involved a defendant entrusted with the care of a minor who was assaulted in the presence of that defendant. At least one case from another jurisdiction has. In *State v. Walden,* 306 N.C. 466, 293 S.E.2d 780 (1982), defendant was present when her son was assaulted in her apartment by an adult male with whom she was living. The court held defendant could be convicted as an aider and abettor solely on the basis that she failed to take reasonable steps to prevent the assault. It said that parents have an affirmative legal duty to protect and provide for their minor children. In so holding, the North Carolina Supreme Court said:

> We think that the rule we announce today is compelled by our statutes and prior cases establishing the duty of parents to provide for the safety and welfare of their children. Further, we find our holding today to be consistent with our prior cases regarding the law of aid-

ing and abetting. It remains the law that one may not be found to be an aider and abettor, and thus guilty as a principal, solely because he is present when a crime is committed. *State v. Benton,* 276 N.C. 641, 174 S.E.2d 793 (1970). It will still be necessary, in order to have that effect, that it be shown that the defendant said or did something showing his consent to the criminal purpose and contribution to its execution. *State v. Hildreth,* 31 N.C. (9 Iredell) 440 (1849). But we hold that the failure of a parent who is present to take all steps reasonably possible to protect the parent's child from an attack by another person constitutes an act of omission by the parent showing the parent's consent and contribution to the crime being committed. *Cf. State v. Haywood,* 295 N.C. 709, 249 S.E.2d 429 (1978) (When a bystander is a friend of the perpetrator and knows his presence will be regarded as encouragement, presence alone may be regarded as aiding and abetting).

*Id.,* 306 N.C. at 472–74, 293 S.E.2d at 786–88.

While the defendant here was not the parent of the child, he stood in the position of the parent since he was charged with the care and welfare of the child. Accordingly, we see no reason why the rule announced in *State v. Walden* could not be applied to a person in defendant's position. Similarly, we think that this rule is compelled by our aiding and abetting statute as well as prior case law interpreting that statute.

Discussing the duty based upon voluntary assumption of care, Professor LaFave notes that:

[a] more difficult problem is involved if he starts to aid the other but does not go so far as to improve the other's position, as where a good swimmer starts to swim out to a drowning bather but turns back on recognizing the bather as his enemy. Perhaps here he would be liable only if his conduct in starting to go to the other's rescue induced other prospective rescuers to forego action. *So too if one voluntarily and gratuitously assumes*

*responsibility for a helpless person— such as for a child or an insane or infirm person—he has a duty thereafter to act to protect the other from harm.* [Emphasis added and footnote deleted.]

W. LaFave and A. Scott, *Substantive Criminal Law* § 3.3(a)(4), at 287 (1986). *See also id.* § 3.3(a)(1) (Duty Based Upon Relationship).

We also note a second basis for liability of defendant as an accessory. Professor Wharton, in his treatise, notes that a bystander may observe the commission of a crime with impunity and that he need not make any effort to prevent the crime or apprehend the offender. He notes that even if the bystander approves of the crime being committed he does not become liable as a principal unless he makes known to the principal that he shares his purpose, is on his side, and will assist him if it is necessary. But, "[o]f course, where the bystander is a friend of the principal in the first degree, and knows that his presence will be interpreted by the latter as encouragement and support, his presence alone may be sufficient for liability to attach." 1 C. Torcia, *Wharton's Criminal Law* § 31, at 166–67 (14th ed. 1978); *accord State v. Hargett,* 255 N.C. 412, 121 S.E.2d 589 (1961) (presence does not incite, encourage, or aid the perpetration of a crime, but when bystander is a friend of perpetrator and knows his presence will be regarded by perpetrator as encouragement and protection, presence alone may be aiding and abetting).

In the case before us, the victim testified that defendant was "there" when Villegas wanted the victim to touch Villegas' penis with his mouth and the victim did so. Even if the jury believed the victim's trial testimony that defendant at some point pulled the victim's pants up when Villegas pulled them down, there was direct evidence from which the jury could infer that Villegas succeeded in sexually contacting the victim and that defendant failed to intervene to stop it. We believe that the jury could find one in defendant's position could be criminally liable in the circumstances of this

case. Defendant's failure to act to protect the victim against harm by Villegas, defendant's friend, could be viewed by the jury as encouraging the commission of the offense. Moreover, the victim testified that either Villegas or defendant told him not to tell what happened. Defendant's failure to report this crime is a factor that may be considered in determining defendant's legal accountability as an aider and abettor. *See People v. Bailey*, 132 Ill.App.3d 399, 87 Ill.Dec. 368, 476 N.E.2d 1360 (1985).

Thus, the language of the statute as well as the uniform jury instruction on aiding and abetting could make the defendant criminally liable based upon the victim's trial testimony which seemingly attempted to exonerate defendant. While defendant's mere presence may not, under cases cited above from New Mexico, be sufficient to invoke criminal liability, his relationship to the victim coupled with his friendship with Villegas and his failure to intervene are sufficient to allow the jury to convict him as an accessory to the crimes committed.

## 2. *Abuse of Discretion in Admitting Prior Inconsistent Statements*

■ Defendant concedes the trial court did not abuse its discretion in admitting the child's prior inconsistent statements under SCRA 1986, 11–613(B). Nevertheless, defendant seems to contend that the statements could not be considered as substantive evidence because the child was unable to effectively respond to cross-examination. *See id.;* SCRA 1986, 11–801(D)(1)(a). Defendant appears to base his argument on the assumption that the child was incompetent to testify. As we discuss below, however, we believe the trial court did not abuse its discretion in finding the child competent to testify, therefore, defendant's argument on this point must fail.

## 3. *Ineffective Assistance of Counsel*

Defendant asserts two instances of ineffective assistance of counsel. The first concerns trial counsel's failure to subpoena Villegas to testify at trial. The second concerns trial counsel's failure to demand the disclosure of notes Yolanda Morales used to testify at trial. Defendant seeks to raise the matter of Ms. Morales' notes through a motion to add an issue. We grant that motion and address both instances of claimed ineffective assistance of counsel.

### a. Failure to Subpoena Villegas

Trial counsel did not subpoena Villegas to testify at trial on behalf of defendant. At a motion for a new trial, trial counsel tendered Villegas' testimony. Defendant asserts that Villegas would have testified that defendant had nothing to do with the incident. The trial court indicated that Villegas' testimony might very well change the results if a new trial were granted. Nonetheless, the trial court went on to say that trial counsel failed to use due diligence in discovering the testimony because he failed to subpoena Villegas and, therefore, did not grant a new trial.

■ To show ineffective assistance of counsel, defendant must prove that trial counsel's actions were not those of a reasonably competent attorney and that those actions prejudiced defendant. *See State v. Talley*, 103 N.M. 33, 36, 702 P.2d 353, 356 (Ct.App.1985). This court will not attempt to second-guess tactics and strategy of trial counsel on appeal. *See State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct.App.1986). The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel. *See State v. Barnes*, 83 N.M. 566, 494 P.2d 979 (Ct.App. 1972).

■ Defendant argues that trial counsel's motion for a new trial based on the newly discovered evidence demonstrates that not calling Villegas constituted error, not a strategy. *Cf. State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980) (failure to subpoena a potential witness known to defendant demonstrates a lack of due diligence). We disagree. Defense counsel may well have thought during trial that the recantation by the victim created an excellent opportunity for an acquittal. To call Villegas would be a risky proposition. Even if Villegas agreed to testify, the net result of his

testimony, if he was vigorously cross-examined, could be incriminatory to defendant. The motion for a new trial was merely a recognition that, the jury having convicted defendant, testimony by Villegas could not cause any further harm. Without more facts indicating that trial counsel's actions were truly an error and not a strategy, we cannot say there was ineffective assistance of counsel on this basis. *See State v. Powers*, 111 N.M. 10, 800 P.2d 1067 (Ct.App. 1990).

### b. Disclosure of Morales' Notes

■ Defendant also complains that his trial counsel's failure to demand disclosure of the notes used by Morales to refresh her memory during trial was ineffective assistance of counsel. Even if such action by defendant's trial counsel fell below the standard of a reasonably competent attorney, defendant still fails to show how such action prejudiced him. *See State v. Talley.* Defendant does claim he was prejudiced in two ways. We find each unpersuasive.

First, defendant contends that had trial counsel made a timely demand for the notes, trial counsel would have had a "vivid record of her suspect interview techniques." Defendant asserts the techniques were only described to trial counsel "second-hand through Dr. Natalicio's somewhat antiseptic expert testimony." We fail to see how Ms. Morales' notes of her interview techniques would have been any less "antiseptic" than Dr. Natalicio's description to trial counsel. Further, defendant has failed to show why the lack of a "vivid record" of Morales' techniques prejudiced him. We find no prejudice on this ground.

Defendant also asserts prejudice because he speculates that if the state decided to withhold the notes, some of the prior inconsistent statements of the boy would have been excluded. Speculation about what the state might have done does not demonstrate prejudice. We, therefore, reject defendant's ineffective assistance claim on this ground.

### 4. *Abuse of Discretion in Finding Child Competent to Testify*

■ Defendant argues that the trial court abused its discretion by finding the child competent to testify. Defendant points to Dr. Natalicio's testimony at the competency hearing and trial that the child was not competent to testify. Defendant also voices great concern because the trial judge did not directly observe the child before ruling him competent to testify. Defendant reasons that because the judge did not observe the child there was nothing to contradict Dr. Natalicio's testimony, and, therefore, the child should have been deemed incompetent to testify.

Expert testimony is opinion, not fact. *See State v. James*, 85 N.M. 230, 511 P.2d 556 (Ct.App.1973). The trial court, like the jury, can ignore the expert testimony. *Id.* Defendant argues that because nothing contradicts the expert opinion, the trial court is bound by it when determining competency. His argument is premised on the assumption that the trial judge must actually observe the witness with his own eyes before deciding competency. As authority, defendant cites *State v. Manlove*, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968). In *Manlove*, this court quoted an early supreme court case that stated "[t]he trial court had an opportunity to examine this witness and observe his demeanor, and could judge his mental capacity from his manner of testifying." *Id.* at 191, 441 P.2d at 231, *quoting State v. Armijo*, 18 N.M. 262, 135 P. 555 (1913). From this the defendant concludes that the trial court must examine and observe the witness prior to ruling on competency.

In *Manlove*, however, this court also stated that the trial court must determine competency from inquiries into the child's capacities of observation, recollection, and communication, as well as the child's appreciation or consciousness of the duty to speak the truth. *Id.* at 192, 441 P.2d at 232. The question is, therefore, whether the steps taken by the trial court were sufficient inquiry or observation. Before determining competency, the trial court held a hearing, listened to witnesses, con-

sidered reports about the child, and listened to tapes of the child's testimony at the preliminary hearing. Moreover, the trial judge had the opportunity to observe the child testify at trial.

Under those circumstances, we conclude that the trial court met its duty of observation and inquiry. Those inquiries, we believe, provided sufficient evidence to disregard Dr. Natalicio's opinion and rely on the court's own inquiries. Further, even if the doctor's opinion was uncontradicted, the trial court was still not required to accept it as fact. *See State v. James,* 85 N.M. at 233, 511 P.2d at 559. Moreover, there was other evidence to support a determination of competency. Accordingly, we do not believe the trial court abused its discretion in finding the child competent to testify.

### 5. *Improper Jury Instructions*

Defendant also argues the trial court erred by giving improper jury instructions. Defendant complains that the court erred by giving an attempt instruction when all the evidence showed a completed crime. Defendant further complains that the court erred by giving accessory instructions that contained no mention of specific intent. Both issues are raised pursuant to *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985).

#### a. Attempt Instruction

■ Defendant failed to raise this issue in his docketing statement. He did raise a related issue arguing the trial court erred by not granting his motion for a judgment of acquittal because all of the evidence proved a completed crime rather than an attempted crime. Because the jury instruction issue was not raised in the docketing statement, we need not address it on appeal. *See State v. Hernandez,* 95 N.M. 125, 619 P.2d 570 (Ct.App.1980). Nevertheless, given the nature of the charges and the boy's young age, we believe the jury could reasonably infer that he was incapable of knowing whether the crime was completed. The jury could have found that

only an attempt was committed. *See Medler v. Henry,* 44 N.M. 275, 101 P.2d 398 (1940); *State v. Chavez,* 78 N.M. 446, 432 P.2d 411 (1967). It appears the trial court may have recognized the potential inferences from the evidence and properly instructed the jury on attempt.

#### b. Accessory Instruction

■ Although defendant objected to the accessory instruction, he failed to tender what he believed to be a correct instruction on the matter of specific intent. Therefore, this issue is not preserved for review because he failed to tender a legally correct instruction. *See State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App. 1982). Moreover, the trial court did instruct on the issue of specific intent, although it was in an instruction separate from the accessory instruction. Therefore, there was no error. *See State v. Puga,* 85 N.M. 204, 510 P.2d 1075 (Ct.App.1973).

### 6. *Handcuffs Issue*

■ Pursuant to *State v. Franklin* and *State v. Boyer,* defendant argues the trial court erred in not granting a mistrial because the jury saw defendant in handcuffs. The trial court denied the motion for mistrial. Before ruling on the motion, the court pointed out that certain jurors saw defendant in handcuffs at 6:10 when the jury was released for dinner, that the jury returned at 7:10, and that defendant moved for a mistrial at 9:20 just before the jury was about to return its verdict. The state asserts the court denied the motion as untimely although the court never explicitly gave timeliness as its basis for denying the motion. The trial court could have also concluded that the jury's inadvertent view of defendant after being released for dinner did not warrant a mistrial. *See State v. Gomez,* 82 N.M. 333, 481 P.2d 412 (Ct. App.1971). In either event, we conclude that the court did not abuse its discretion in denying the motion.

### 7. *New Trial*

■ Also pursuant to *Franklin* and *Boyer,* defendant argues the trial court

**800**

erred in denying his motion for new trial on the basis of newly discovered evidence that Villegas had been acquitted, that the victim had testified about a second day at the bar during Villegas' trial, and that Ms. Bruce revealed she had tape recorded a session she had with the victim. A motion for new trial will not be granted unless the newly discovered evidence fulfills the following requirements: 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered prior to trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory. *See State v. Volpato*, 102 N.M. 383, 696 P.2d 471 (1985).

With regard to Villegas' acquittal, an accessory may be convicted even though the principal is acquitted. *State v. Ochoa*, 41 N.M. 589, 72 P.2d 609 (1937). Therefore, the acquittal of Villegas was irrelevant to defendant's case. The child's testimony at Villegas' trial regarding a second day at the bar would have only impeached or contradicted his testimony at defendant's trial. *See State v. Volpato.* Moreover, in light of the child's difficulty in accurately recalling events, we do not believe the result would change at a new trial if the evidence was introduced. Finally, with regard to Ms. Bruce's tape recording, defendant has not demonstrated how he would have benefitted from the introduction of the tape. Absent evidence the tape differed from Ms. Bruce's report of the session, we do not believe the outcome of a new trial would change. Accordingly, for the foregoing reasons, we hold the trial court did not err in denying defendant's motion for a new trial.

8. *Fundamental Error*

While this case was pending the supreme court decided *State v. Osborne* which also involved criminal sexual contact of a minor. The court held in that case that "unlawfulness" was an essential element of the offense and failure to instruct the jury on that element constitutes fundamental error. The court indicated, how-

ever, that instructions which describe the impermissible nature of the act adequately differentiate lawful from unlawful conduct and, therefore, satisfy the element of unlawfulness.

As noted at the outset, defendant was convicted of criminal sexual contact of a minor as an accessory. This was count four of the information. The district court instructed the jury on this count as follows:

For you to find the defendant guilty as an accessory of criminal sexual contact of a child under the age of 13 as charged in Count 4, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. Manuel Villegas caused Daniel Lopez to touch the penis of Manuel Villegas, and the defendant Edmundo Orosco acted as an accessory to this;

2. Daniel Lopez was 12 years of age or younger;

3. This happened in New Mexico sometime between December 5, 1987 and December 19, 1987.

This instruction, as with the instruction in *Osborne*, does not contain the element of "unlawfulness." *Osborne* holds that failure to instruct in that element constitutes fundamental error requiring a new trial.

Because of uncertainty as to whether *Osborne* applies to cases in which the state proves beyond a reasonable doubt the element of unlawfulness, and defendant does not raise the issue, we certified today *State v. Trevino*, 113 N.M. 804, 833 P.2d 1170 (1991). For the same reasons we certify this case.

Like *Trevino* the unlawfulness of the touching by the principal, Manuel Villegas, was established beyond a reasonable doubt, never called into question by defendant and, also like *Trevino*, the defendant here primarily attempted to discredit the victim's testimony.

CONCLUSION

For the reason stated, we would affirm defendant's convictions; however, because of the uncertainty as to the proper resolution of the criminal sexual contact of a

minor under age 13 as an accessory conviction, we certify the case for resolution.

IT IS SO ORDERED.

HARTZ, J. (specially concurring).

CHAVEZ, J. (concurring in part, dissenting in part).

HARTZ, Judge (Specially Concurring).

I join in all of Judge Bivins' opinion except the discussion of the impact of *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991). I do, however, concur in the certification.

In my view, if "unlawfulness" is an essential element of the offense, in the ordinary meaning of that phrase, then there is no way to save the conviction—defendant is entitled to a new trial. When the jury has not been instructed on an essential element of the offense, it is beyond the power of an appellate court to affirm the conviction on the ground that the facts at trial presented no real issue on that element. For an appellate court to make that determination is to arrogate a function that belongs to the jury. Such an act by an appellate court would be the equivalent of a court's directing a verdict of guilty with respect to an element of the offense. Yet only a jury can decide whether the facts establish each element of the offense. *See Carella v. California*, 491 U.S. 263, 267, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (Scalia, J., concurring). I suspect that an error of this nature would require setting aside the conviction not only on direct appeal but also on collateral attack through habeas corpus proceedings.

Perhaps when *Osborne* stated that unlawfulness is an element of the offense, it did not mean "element of the offense" in the usual sense. Perhaps "unlawfulness" is an element that must be proved only in certain circumstances. It is not at all uncommon for the state to be required to prove certain facts beyond a reasonable doubt only when the matter is raised by the defendant. *See, e.g., State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977) (question of whether victim was wife of defendant in rape case); *State v. Lopez*, 109 N.M. 578, 787

P.2d 1261 (Ct.App.1990) (intent-to-return defense to charge of receiving stolen property); SCRA 1986, 14–5101 (uniform jury instruction on insanity defense). The absence of any reference to "unlawfulness" in SCRA 1986, 14–925, the uniform jury instruction for the elements of criminal sexual contact of a minor under thirteen, suggests that our supreme court, at least at one time, viewed lawfulness as an issue to be raised by the defendant. Yet when a fact (such as the sanity of the defendant) must be proved only when the issue is raised by the defendant, the fact is ordinarily denominated as a matter of affirmative defense. *Osborne* explicitly states that lawfulness is not an exception or defense. Moreover, affirmative defenses, almost by definition, can be waived by a defendant. In *Osborne* our supreme court held that it was error not to instruct the jury on unlawfulness even though the defendant specifically objected to an instruction on the matter. Thus, *Osborne* appears to use the phrase "element of the offense" in its customary sense.

In short, it appears to me that *Osborne* compels reversal in this case and will probably require setting aside (either on direct appeal or habeas corpus) a significant portion of the convictions heretofore entered in New Mexico for criminal sexual offenses against children under thirteen. Because of the importance of the issue, however, certification to our supreme court is appropriate.

CHAVEZ, Judge. (concurring in part and dissenting in part).

I concur in certifying this case, but would reverse the ruling that there was sufficient evidence to convict because only prior inconsistent uncorroborated statements were used to prove the charges. Defendant contends that the prior inconsistent statements alone are insufficient evidence for convictions. The state argues that there is independent corroborative evidence that, combined with the prior inconsistent statements, amounts to sufficient evidence to allow the jury to convict. Both parties' arguments rely on *State v. Maes-*

*tas,* 92 N.M. 135, 584 P.2d 182 (Ct.App. 1978).

In *Maestas,* the defendant was convicted of aggravated battery. *Id.* at 137, 584 P.2d at 184. At trial, the victim refused to identify the defendant as the man who beat her. *Id.* at 138–39, 584 P.2d at 185–86. The prosecution, therefore, elicited prior inconsistent statements of the victim from three other witnesses. *Id.* Each witness testified that the victim had said the defendant was the man who beat her. *Id.* The prior out of court statements were the only evidence identifying the defendant as the perpetrator. On appeal, the defendant argued there was insufficient evidence to convict him because only prior inconsistent statements linked him to the crime. *Id.* at 145, 584 P.2d at 190.

The *Maestas* court distinguished between evidence proving the "corpus delicti" (the substance of the crime) and evidence proving the identity of the perpetrator of the crime. *Id.* The court noted that the substance of the crime, aggravated battery, was properly proved by circumstantial evidence. *Id.* The sole issue for the court was whether prior inconsistent statements alone were sufficient evidence to establish the identity of the defendant. *Id.* The court found that there was corroborative evidence of the prior inconsistent statements. *Id.*

The corroborative evidence listed by the court was that 1) the victim lived with the defendant in his home for a week, 2) *no other person bore an unfavorable relationship with the victim that would lead to a severe beating,* 3) *defendant presented no evidence to cast doubt upon the truth of the prior inconsistent statements,* and 4) no evidence of defendant's good character was presented. *Id.* The court concluded that the above evidence corroborated the truth of the prior statements made by the victim. *Id.* Accordingly, there was sufficient evidence to prove the defendant was the perpetrator because the prior inconsistent statements were not the "sole basis for a conviction." *Id.*

This court's holding in *Maestas* implied that prior inconsistent statements, without corroboration, are insufficient evidence upon which to base a conviction. Consequently, in this case we must decide if prior inconsistent statements were the sole basis for convicting defendant as an accessory to attempted CSPM and CSCM. The accessory statute provides that a person may be convicted of a crime as an accessory "if he procures, counsels, aids or abets in its commission." NMSA 1978, § 30-1-13 (Repl.Pamp.1984). The question is, therefore, whether there is corroborative evidence of the boy's prior inconsistent statements that defendant helped Villegas to commit the crimes. The state argues there is corroborative evidence of the prior statements. I disagree.

The boy's prior statements were not inconsistent regarding defendant's presence at the bar or whether Villegas tried to sexually assault the boy. Rather, the inconsistency arose from the boy's subsequent denial at trial that defendant helped Villegas. I fail to see how the evidence pointed to by the state corroborates the truth of the prior inconsistent statements. I do not read *Maestas* to mean any evidence that corroborates that the declarant was telling the truth as to *any fact* in the past is sufficient corroborative evidence to support the conviction. The corroboration must go to the prior inconsistent statements themselves and not simply to prior consistent statements.

A close examination of the facts excluding the prior inconsistent statements discloses that those facts do not corroborate the commission of the crime. There is nothing that would corroborate defendant's helping Villegas commit the offenses. The fact that the evidence shows that the boy was in the custody of defendant, that defendant took the boy to the bar, and that defendant told the boy's mother about the incident between Villegas and the boy do not corroborate the commission of the crime by defendant. Unlike *Maestas,* there was another person who committed the crime and there was evidence to cast doubt upon the truth of the prior inconsistent statements. For example, Dr. Luis Natalicio testified for the defense. He stated

that the interview techniques used by Yolanda Morales, a counselor at Border Area Mental Health, caused the boy to lose any ability to discern the difference between truth and falsehood. Dr. Natalicio further testified that the interview hopelessly contaminated the boy's testimony. Although the jury was entitled to disregard Dr. Natalicio's expert opinion, *see State v. James*, 85 N.M. 230, 511 P.2d 556 (Ct.App.1973), as the court in *Maestas* recognized, the doubt created by the doctor's testimony was an added reason not to accept the prior inconsistent statements made by the boy as the sole basis for convicting defendant as an accessory. In fact, there was evidence that defendant prevented Villegas from committing the crime.

The state is correct when it asserts that this court must review the evidence in the light most favorable to the verdict, resolving all conflicts therein and indulging all permissible inferences in favor of the verdict. *See State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). However, as the supreme court also declared, where "the evidence must be buttressed by surmise and conjecture, rather than logical inference in order to support a conviction, this Court, as the final arbiter charged with the protection of civil liberties, cannot allow such conviction to stand." *State v. Vigil*, 87 N.M. 345, 349, 533 P.2d 578, 582 (1975). In accepting the evidence offered by the state as corroborative of the truth of the prior inconsistent statements, the majority opinion is resorting to impermissible surmise and conjecture rather than logical inference. Evidence that the declarant was telling the truth about prior statements consistent with his trial testimony does not provide a logical basis to infer that the prior inconsistent statements must also be true.

In addition, the majority takes victim's statements out of context. The majority opinion stated that "[a]t the trial the victim was asked by the prosecutor if he remembered telling other people that defendant helped Villegas and that defendant himself had touched the child. The victim said that he had and that this was the truth." This statement, taken out of context, is then

used to prove that there was direct evidence that supports the jury verdict. However, the victim qualified his statement by stating that he did not remember saying that defendant had helped Villegas, and that he made a mistake at an earlier interview when he said that defendant had touched him.

I do not believe *Maestas*, or this case, should be read to mean that prior inconsistent statements can never be sufficient evidence standing alone. However, the emphasis on corroboration demonstrates that the prior inconsistent statements must be trustworthy. *Maestas* and the lack of corroboration in this case makes the prior inconsistent statements untrustworthy and, therefore, insufficient evidence as a sole basis for conviction.

Without the prior inconsistent statements, there is no other evidence to show that defendant was an accessory to CSCM or attempted CSPM. At most, the evidence shows that defendant was present when Villegas committed the acts in question. Mere presence, without some outward manifestation or expression of approval, is insufficient to sustain a conviction as an accessory. *See State v. Luna*, 92 N.M. 680, 594 P.2d 340 (Ct.App.1979). Because presence alone is not enough, the prior inconsistent statements are necessary to the state's case against defendant as an accessory.

The majority opinion cites a North Carolina case for the proposition that a parent of a child should be convicted as an aider and abettor solely on the basis that the parent failed to take reasonable steps to protect the child. The majority then extends this out-of-state case to include other guardians or baby-sitters who are charged with the care of the child. The majority then proposes to incorporate this proposition into New Mexico's accessory statute. I do not believe our legislature intended such an extension. Penal statutes must be strictly construed, and any doubts about their construction must be resolved in favor of lenity. *State v. Bybee*, 109 N.M. 44, 781 P.2d 316 (Ct.App.1989). Further, the

majority opinion makes unreasonable leaps in logic. It states:

> Even if the jury believed the victim's trial testimony that defendant at some point pulled the victim's pants up when Villegas pulled them down, there was direct evidence from which the jury could infer that Villegas succeeded in sexually contacting the victim and that defendant failed to intervene to stop it. We believe that the jury could find one in defendant's position could be criminally liable in the circumstances of the case.

There is an illogical jump from holding defendant responsible for standing by idly to the majority arguing that defendant must be successful in preventing the abuse. Also, as stated above, untrustworthy prior inconsistent statements alone are insufficient evidence upon which to base a conviction. *See also United States v. Orrico,* 599 F.2d 113 (6th Cir.1979) (prior inconsistent statements as sole support for central element of a crime are insufficient evidence to prove guilt beyond a reasonable doubt). Therefore, I respectfully dissent and would reverse defendant's convictions.